**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

| | |
|---|---|
| N. GLANTZ & SON, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CLEANLIFE ENERGY LLC; and DOES 1 to 50, inclusive, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 3:26-cv-00454-GNS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## <u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>

F. Maximilian Czernin (KY 93674)
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth St., Suite 1900
Cincinnati, OH 45202
Phone: (513) 361-1200
Email: max.czernin@squirepb.com

B. Scott Jones
REMINGER CO., LPA
730 West Main Street, Suite 300
Louisville, KY 40202
Phone: (502) 625-7292
Email: sjones@reminger.com
***Counsel for Defendant CleanLife Energy LLC***

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................. iv

Introduction.......................................................................................................... 1

Background ........................................................................................................... 3

Legal Standards..................................................................................................... 5

Argument .............................................................................................................. 6

    I. Plaintiff's Claims Fail under the Express Warranty. ................................... 6

    II. The Economic Loss Rule Bars the Majority of Plaintiff's Tort Claims (Counts Three, Four, Five, Seven, Eight, and Nine). ......................................................................... 8

        A.    Plaintiff's Fraud Claim (Count Three) is Barred by the Economic Loss Doctrine.............................................................................................. 9

        B.    Plaintiff's Negligent Misrepresentation Claim (Count Four) is Barred by the Economic Loss Doctrine............................................................. 11

        C.    Plaintiff's Product Liability and Strict Liability Claims (Counts Five and Seven) are Barred by the Economic Loss Doctrine. ....................................... 11

        D.    Plaintiff's Negligence and Gross Negligence Claims (Counts Eight and Nine) are Barred by the Economic Loss Doctrine. ............................................. 12

    III. Plaintiff's Tort Claims Should Be Dismissed for Failure to State a Claim (Counts Two, Three, Four, Five, Seven, Eight, Nine, Ten, Eleven, and Twelve). .................................. 13

        A.    Plaintiff Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Two)........................................................ 13

        B.    Plaintiff Fails to State a Claim for Fraud (Count Three). ................................ 14

        C.    Plaintiff Fails to State a Claim for Negligent Misrepresentation (Count Four).16

        D.    Plaintiff Fails to State Claims for Product Liability or Strict Liability (Counts Five and Seven)......................................................................................... 18

        E.    Plaintiff Fails to State Claims for Negligence or Gross Negligence (Counts Eight and Nine). ......................................................................................... 19

F.      Plaintiff Fails to State a Claim for Interference with Contractual Relations / Prospective Relations (Count Ten). .............................................................................. 20

G.      Plaintiff Fails to State a Claim for Comparative and Equitable Indemnity (Count Eleven). .................................................................................................... 22

H.      Plaintiff Fails to State a Claim for Declaratory Judgment (Count Twelve). .... 22

Conclusion ........................................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................5

*Biszantz v. Stephens Thoroughbreds, LLC*,
    No. 5:13-cv-00348-REW, 2015 WL 574594 (E.D. Ky. Feb. 11, 2015), *aff'd*,
    620 F.App'x 535 (6th Cir. 2015) .............................................................................6

*Bosch v. Bayer Healthcare Pharms., Inc.*,
    13 F.Supp.3d 730 (W.D. Ky. 2014)........................................................................18

*Bowling Green Mun. Utilities v. Thomasson Lumber Co.*,
    902 F.Supp. 134 (W.D. Ky. 1995)..........................................................................18

*Brake Parts, Inc. v. Lewis*,
    No. 09-cv-00132-KSF, 2011 WL 42973 (E.D. Ky. Jan. 6, 2011) ..........................20

*Carruthers v. Edwards*,
    395 S.W.3d 488 (Ky. Ct. App. 2012) .....................................................................19

*Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*,
    161 F.Supp.3d 513 (W.D. Ky. 2015).......................................................................10

*Degener v. Hall Contracting Corp*,
    27 S.W.3d 775 (Ky. 2000).......................................................................................22

*Eifler v. Greenamyer*,
    No. 2017-CA-000079, 2019 WL 2712618 (Ky. Ct. App. June 28, 2019)................16

*Falcon Coal Co. v. Clark Equip. Co.*,
    802 S.W.2d 947 (Ky. Ct. App. 1990) ......................................................................18

*Flint v. Hewlett-Packard Co.*,
    No. 3:10-cv-00597-S, 2011 WL 3844193 (W.D. Ky. Aug. 30, 2011) ......................6

*Giddings & Lewis, Inc. v. Indus. Risk Insurers*,
    348 S.W.3d 729 (Ky. 2011).....................................................................................2, 8

*Helton v. Am. Gen. Life Ins. Co.*,
    946 F.Supp.2d 695 (W.D. Ky. 2013)........................................................................16

*Hensyn Res. LLC v. Horizon Mining LLC*,
  No. 22-cv-00085-DLB, 2023 WL 6217348 (E.D. Ky. Sept. 25, 2023)..................................23

*Horton v. Union Light, Heat & Power Co.*,
  690 S.W.2d 382 (Ky. 1985) .......................................................................................................12

*Jones v. Lubrizol Advanced Materials, Inc.*,
  559 F.Supp.3d 569 (N.D. Ohio 2021).........................................................................................4

*Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*,
  No. 3:09-cv-00644, 2011 WL 5904451 (W.D. Ky. Nov. 23, 2011).........................................11

*Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*,
  276 F.3d 845 (6th Cir. 2002) ....................................................................................................12

*Nami Res. Co., L.L.C. v. Asher Land & Min., Ltd.*,
  554 S.W.3d 323 (Ky. 2018)..........................................................................................................8

*Nelson v. Columbia Gas Transmission, LLC.*,
  808 F.App'x 321 (6th Cir. 2020) ...............................................................................................19

*New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*,
  44 F.4th 393 (6th Cir. 2022) .................................................................................................2, 10

*Our Lady of Bellefonte Hosp., Inc. v. Tri-State Physicians Network, Inc.*,
  No. 06-cv-00141-HRW, 2007 WL 2903231 (E.D. Ky. Sept. 27, 2007) ...................................6

*Pastor-Richard v. Goodman Glob., Inc.*,
  No. 2:12-cv-00268-WOB-JGW, 2013 WL 12328293 (E.D. Ky. July 3, 2013) ...................1, 6

*Patton v. Bickford*,
  529 S.W.3d 717 (Ky. 2016).......................................................................................................19

*PCR Contractors, Inc. v. Danial*,
  354 S.W.3d 610 (Ky. Ct. App. 2011) .......................................................................................17

*In re Porsche Cars N. Am., Inc.*,
  880 F.Supp.2d 801 (S.D. Ohio 2012) .........................................................................................4

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
  683 F.3d 239 (6th Cir. 2012) ....................................................................................................16

*Rodriguez v. Safeco Ins. Co. of Am.*,
  No. 3:25-cv-00154-GNS, 2025 WL 2810018 (W.D. Ky. Sept. 30, 2025)
  (Stivers, J.) ..................................................................................................................................6

*Rouse v. Farmer*,
  No. 2015-CA-001626-MR, 2018 WL 2078030 (Ky. Ct. App. May 4, 2018).........................21

*Sanderson v. HCA-The Healthcare Co.*,
    447 F.3d 873 (6th Cir. 2006) ...............................................................................15

*Scottsdale Ins. Co. v. Seven Ctys. Servs., Inc.*,
    No. 3:23-cv-00357-DJH-CHL, 2025 WL 2337961 (W.D. Ky. Aug. 13, 2025).....................23

*Sims v. Atrium Med. Corp.*,
    349 F.Supp.3d 628 (W.D. Ky. 2018)....................................................................17

*Smith v. Am. Strategic Ins. Corp.*,
    No. 4:24-cv-00079, 2025 WL 2073813 (W.D. Ky. July 23, 2025).........................................12

*Snow Pallet, Inc. v. Monticello Banking Co.*,
    367 S.W.3d 1 (Ky. App. 2012) .............................................................................20

*State Auto Prop. & Cas. Ins. Co. v. Hargis*,
    785 F.3d 189 (6th Cir. 2015) ...............................................................................13

*Thompson v. Budd Co.*,
    23 F.App'x 239 (6th Cir. 2001) ...........................................................................22

*Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop. Corp.*,
    No. 5:15-cv-00045-TBR, 2015 WL 4464105 (W.D. Ky. July 21, 2015)................................23

*Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    484 F.Supp.3d 492 (E.D. Mich. 2020)..................................................................24

*Westlake Vinyls, Inc. v. Goodrich Corp.*,
    518 F.Supp.2d 955 (W.D. Ky. 2007)......................................................................8

**Statutes**

Declaratory Judgment Act, 28 U.S.C. § 2201.............................................................22

Ky. Rev. Stat. § 355.2-719.................................................................................1, 6

Ky. Rev. Stat. § 411.300...................................................................................18

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant CleanLife Energy LLC ("CleanLife") moves to dismiss Plaintiff N. Glantz & Son, LLC's ("Plaintiff") Complaint [ECF No. 1-1] in its entirety for failure to state a claim upon which relief can be granted.

## **INTRODUCTION**

This case involves a garden variety contractual dispute arising out of the business relationship between Plaintiff and CleanLife.  Plaintiff alleges that it purchased LED "SmartPuck" lights from CleanLife and that the lights ultimately delivered did not meet specification.  The Complaint does not allege that anyone suffered a personal injury or any damage to property. Nonetheless, in a classic case of overpleading, Plaintiff asserts a litany of inappropriate and unsupportable claims, including numerous tort claims, that plainly fail as a matter of law.  The Complaint should be dismissed as a matter of law for at least three reasons.

***First***, all Plaintiff's claims are foreclosed by the limitation of remedies in CleanLife's express warranty.  Under the Uniform Commercial Code, sellers of goods may both limit the buyer's remedies for allegedly defective goods to return or repayment and preclude consequential damages.  *See* Ky. Rev. Stat. § 355.2-719.  The express warranty between CleanLife and Plaintiff did just that.  Plaintiff not only fails to allege that it complied with the warranty claim process for repair or replacement, it fails to allege that CleanLife did not repair or provide replacement SmartPucks.  Furthermore, the Complaint seeks damages and theories of relief specifically excluded by the warranty.  Courts addressing similar claims have routinely granted motions to dismiss and enforced limitations of remedies in warranties.  *See, e.g.*, *Pastor-Richard v. Goodman Glob., Inc.*, No. 2:12-cv-00268-WOB-JGW, 2013 WL 12328293, at *2 (E.D. Ky. July 3, 2013) ("[T]he limitations in defendants' express warranty bars the relief requested in plaintiffs' amended complaint [for incidental or consequential damages and injunctive relief].").

1

*Second*, most of Plaintiff's claims are barred by the economic loss rule. Under Kentucky law, "costs for repair or replacement of the product itself, lost profits and similar *economic losses cannot be recovered pursuant to negligence or strict liability theories but are recoverable only under the parties' contract*, including any express or implied warranties." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 738 (Ky. 2011) (emphasis added). This "economic loss rule" bars Plaintiff's tort claims for fraud, negligent misrepresentation, product liability, strict liability, negligence, and gross negligence. *See, e.g.*, *New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 413–15 (6th Cir. 2022) (fraud); *Giddings*, 348 S.W.3d at 746 (negligent misrepresentation, product liability, strict liability, negligence, and gross negligence).

*Third*, even if the economic loss rule were not applicable, and it is, Plaintiff's claims other than for breach of contract and warranty would fail. In brief:

- Count Two for breach of the implied covenant of good faith and fair dealing should be dismissed because it is not an independent cause of action, and because it is duplicative of Plaintiff's claim for breach of contract.

- Counts Three and Four for fraud and negligent misrepresentation fail to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b), and the negligent misrepresentation claim also fails because it is based on CleanLife's intent to perform under the parties' contract.

- Counts Five and Seven for product liability and strict liability fail because Glantz does not allege any physical harm to the ultimate user or consumer of the SmartPucks.

- Counts Eight and Nine for negligence and gross negligence fail because Glantz does not identify a duty to Glantz other than under a contract that CleanLife allegedly breached.

- Count Ten for interference with contractual relations should be dismissed because there are no allegations that any contract with a third party was breached, nor does it specify with particularity any interference with prospective business relationships.

- Count Eleven for comparative and equitable indemnity fails because there are no allegations that Glantz has been compelled to pay damages to a third party.

- Count Twelve for declaratory judgment should be dismissed as duplicative of Glantz's breach of contract claim.

For the foregoing reasons, and the reasons set forth more fully below, CleanLife's Motion should be granted in its entirety.

## **BACKGROUND**

Plaintiff is a distributor of lighting supplies and CleanLife is a manufacturer of energy-efficient LED lighting supplies.[1]  Compl. ¶¶ 7–8.   Plaintiff has been a customer of CleanLife since 2016. *Id.* ¶ 8.

In September 2023, non-party Young Electric Sign Company ("YESCO") purchased 6,040 LED "SmartPuck" lights from Plaintiff. *Id.* ¶ 11.  To fulfill that order, Plaintiff purchased 6,040 SmartPucks from CleanLife for $111,740 via a December 20, 2023 order called the "Glantz PO." *Id.* ¶ 12.  Plaintiff alleges that "in order to induce Plaintiff into entering into the Glantz PO,

---

[1] For purposes of this Motion only, CleanLife accepts the truth of the well-pleaded factual allegations in the Complaint.

[CleanLife] *expressly* and impliedly *warranted* that the SmartPucks purchase[d] by Plaintiff would be made according to the industry's IP67 ingress protection standard and have a 50,000-hour L70 rating, meaning the SmartPucks were supposed to last 5.7 years at 24/7 operation before experiencing significant loss in terms of brightness." *Id.* ¶ 64 (emphasis added); *see also id.* ¶ 16 (alleging SmartPucks were to be manufactured to IP67 standard and 50,000-hour L70 rating "[a]ccording to the product specification sheet").

The express warranty ("Warranty") is included as Exhibit 1 to the accompanying Declaration of Justin Miller ("Miller Decl."). [2] The Warranty provides, in relevant part, that the remedy for any defective product is for CleanLife to "either replace the Product, or provide a credit equal to the lesser of the original purchase price or the current price CLEANLIFE charges for the Product" at CleanLife's discretion. Miller Decl., Ex. 1. The Warranty also makes clear that "CleanLife *shall not in any event be liable for any other costs or damages, including without limitation, lost profits, indirect, incidental, compensatory, consequential, special, punitive, or other damages whether as a result of breach of contract, warranty, tort (including negligence), strict liability, or any other theory.*" *Id.* (emphasis added).

The SmartPucks were delivered in full by March 12, 2024. Compl. ¶ 14. Plaintiff alleges that YESCO's ultimate customer for the sign, non-party Mystic Lake Casino Hotel ("Mystic Lake") has since complained to YESCO regarding some of the SmartPuck lights being out. *See* Compl. ¶ 15. Plaintiff alleges that the SmartPucks delivered under the Glantz PO were "defective"

---

[2] Under the incorporation-by-reference doctrine, this Court can consider the Warranty in evaluating this Motion even though Plaintiff did not attach it to the Complaint. Courts consider warranty documents where the complaint alleges the existence of an express warranty. *See, e.g.*, *In re Porsche Cars N. Am., Inc.*, 880 F.Supp.2d 801, 816 (S.D. Ohio 2012) ("Because Plaintiffs refer to the Warranties and because the Warranties are undoubtedly central to this products liability action, the Court will consider the Warranties as part of the Complaint."); *Jones v. Lubrizol Advanced Materials, Inc.*, 559 F.Supp.3d 569, 607 (N.D. Ohio 2021) (same).

and "failed to meet the required product specifications, namely the IP67 ingress protection standard." *Id.* ¶ 17.  Plaintiff alleges that as a result of these defects it "has been forced to purchase replacement LED lighting and make the necessary repairs for Mystic Lake." *Id.* ¶ 18.  Plaintiff alleges that CleanLife "provided Glantz the defective SmartPucks [] in order to damage Glantz's business relationship with YESCO" and "obtain[] an unfair business advantage over Glantz with YESCO and other potential customers." *Id.* ¶ 22.  In other words, Plaintiff suggests that CleanLife sabotaged its own products to convince a downstream customer, YESCO, to buy more of CleanLife's products directly from CleanLife—an implausible and factually baseless theory.

The Complaint is notable for what Plaintiff does not allege relating to the elements of Plaintiff's claims.  To wit, Plaintiff does not allege that it filed a warranty claim with CleanLife or that CleanLife refused to replace the SmartPucks or provide a credit.  Plaintiff also does not allege that CleanLife caused injury to any person or property.  Nor does Plaintiff allege that YESCO or any other customer of Plaintiff breached a contract as a result of alleged defects in the SmartPucks. *See id*.  Finally, Plaintiff does not allege that it has been held liable to YESCO, Mystic Lake, or any other person because of the alleged defects. *See id*.

## **LEGAL STANDARDS**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Under Fed. R. Civ. P. 9(b), "a party must state with particularity the circumstances constituting fraud or mistake."  "At a minimum, the Sixth Circuit requires the allegations to contain the 'time, place,

5

and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Our Lady of Bellefonte Hosp., Inc. v. Tri-State Physicians Network, Inc.*, No. 06-cv-00141-HRW, 2007 WL 2903231, at *6 (E.D. Ky. Sept. 27, 2007) (internal quotations omitted); *see also, e.g.*, *Rodriguez v. Safeco Ins. Co. of Am.*, No. 3:25-cv-00154-GNS, 2025 WL 2810018, at *4 (W.D. Ky. Sept. 30, 2025) (Stivers, J.) (granting motion to dismiss). "Generalized and conclusory allegations that the Defendant['s] conduct was fraudulent do not satisfy Rule 9(b)." *Rodriguez*, 2025 WL 2810018, at *4 (quotations omitted).

## **ARGUMENT**

### **I. Plaintiff's Claims Fail under the Express Warranty.**

Plaintiff's claims all fail under the limitation of remedies contained in the Warranty. Under the Uniform Commercial Code as enacted by Kentucky, parties to a contract for the sale of goods may agree to substitute remedies and "may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts[.]" Ky. Rev. Stat. § 355.2-719. Courts enforce contracts with exclusive remedy provisions, including exclusive remedies with timing requirements. *See, e.g.*, *Pastor-Richard v. Goodman Glob., Inc.*, No. 2:12-cv-00268-WOB-JGW, 2013 WL 12328293, at *1 (E.D. Ky. July 3, 2013) (dismissing complaint for failure to state a claim on basis of limitations in warranty); *Flint v. Hewlett-Packard Co.*, No. 3:10-cv-00597-S, 2011 WL 3844193, at *4 (W.D. Ky. Aug. 30, 2011) (dismissing for lack of jurisdiction; existence of warranty limiting plaintiff's remedy to repair or replacement meant plaintiff could not state claim in excess of $75,000); *Biszantz v. Stephens Thoroughbreds, LLC*, No. 5:13-cv-00348-REW, 2015 WL 574594, at *10–11 (E.D. Ky. Feb. 11, 2015), *aff'd*, 620 F.App'x 535 (6th Cir. 2015) (granting defendant's motion for summary judgment; plaintiff was "not entitled to relief due to his

6

similar failure to properly invoke his 'sole and exclusive' remedy under the contract" requiring notice to be provided within 14 days).

Here, the Warranty expressly applies to "Products purchased by N. Glantz & Son ('Glantz') and sold to YESCO."  Miller Decl., Ex. 1; *see also* Compl. ¶¶ 11–12 (alleging Glantz purchased from CleanLife for sale to YESCO).   The Warranty contains a limitation of remedies that requires a warranty claim be submitted within 30 days of the product failure, at which point CleanLife has the sole option to replace the SmartPuck or provide a credit:

> If a CLEANLIFE Product fails due to a product defect covered by this Warranty, CLEANLIFE will, at its sole option, either replace the Product, or provide a credit equal to the lesser of the original purchase price or the current price CLEANLIFE charges for the Product. To make a warranty claim, YESCO must retain the failed Product(s), notify a CLEANLIFE sales representative in writing within thirty (30) days of the Product failure, and provide proof of purchase from CLEANLIFE and photographs of the failed Product(s). Alternatively, YESCO may submit the CLEANLIFE Return Merchandise Authorization (RMA) Form available at www.cleanlife.com/rma. Please note, in the case of replacements, CLEANLIFE may, at its option, replace the Product(s) covered by warranty with a product that has minor deviations in design and/or specifications which do not affect the functionality of the Product.

Miller Decl., Ex. 1.  The Warranty expressly provides that the above procedure is the exclusive remedy of the purchaser for all claims arising from the purchase of CleanLife products:

> THE FOREGOING WARRANTIES CONSTITUTE THE SOLE EXCLUSIVE REMEDY OF THE ORIGINAL PURCHASER AND THE SOLE LIABILITY OF CLEANLIFE ENERGY LLC TO THE ORIGINAL PURCHASER ONLY FOR THE CLEANLIFE PRODUCT(S). NO WARRANTIES OF PERFORMANCE, MERCHANTABILITY, NON-INFRINGEMENT, OR FITNESS FOR A PARTICULAR PURPOSE ARE MADE EXPRESSLY, ORALLY, OR IMPLICITLY BY CLEANLIFE. IN NO EVENT SHALL THE LIABILITY OF CLEANLIFE EXCEED THE REPLACEMENT COST OF THE PRODUCT(S) UNDER THE TERMS AND CONDITIONS OF THIS WARRANTY, AND CLEANLIFE SHALL NOT IN ANY EVENT BE LIABLE FOR ANY OTHER COSTS OR DAMAGES, INCLUDING WITHOUT LIMITATION, LOST PROFITS, INDIRECT, INCIDENTAL, COMPENSATORY, CONSEQUENTIAL, SPECIAL, PUNITIVE, OR OTHER DAMAGES WHETHER AS A RESULT OF BREACH OF CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, OR ANY OTHER THEORY.

*Id.* (capitalization in original). Despite allegedly basing its Complaint on the express warranty, Compl. ¶ 64, Plaintiff fails to allege that a warranty claim was ever submitted or that CleanLife failed to replace the SmartPucks or provide a credit. *Cf.* Compl. ¶ 18 (alleging Plaintiff "has been forced to purchase replacement LED lighting [from a third-party supplier]"). The Complaint also alleges damages of $3.4 million and consequential damages that are clearly precluded by the Warranty's exclusive remedy provision. *See* Compl. at p.18 (Prayer for Relief). Accordingly, the Court should enforce the Warranty's limitation of remedies and dismiss the Complaint in its entirety. *See Pastor-Richard*, 2013 WL 12328293, at *1.

## II. The Economic Loss Rule Bars the Majority of Plaintiff's Tort Claims (Counts Three, Four, Five, Seven, Eight, and Nine).

The majority of Plaintiff's tort claims are barred under the economic loss rule. Under Kentucky law, "[t]he 'economic loss rule' prevents the commercial purchaser of a product from suing in tort to recover for economic losses arising from the malfunction of the product itself, ***recognizing that such damages must be recovered, if at all, pursuant to contract law***." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 733 (Ky. 2011) (emphasis added). "Damages for injuries to persons or 'other property' may be recovered in tort but a case involving ***purely economic losses*** requires resort to the parties' contract and any express or implied warranties." *Id*. (emphasis added); *see also Nami Res. Co., L.L.C. v. Asher Land & Min., Ltd.*, 554 S.W.3d 323, 335 (Ky. 2018) ("[T]he economic loss doctrine requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." (quotations omitted)).

Economic loss includes "both loss in the value of a product caused by a defect in that product (direct economic loss) and consequential loss flowing from the defect, such as lost profits (consequential economic loss)." *Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F.Supp.2d 955, 968

(W.D. Ky. 2007) (quoting *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)).  As a result, the Kentucky Supreme Court has held that the economic loss rule precludes recovery for actions of negligence, negligent misrepresentation, product liability or strict liability, and fraud when there are no damages alleged other than economic losses arising from a commercial transaction.  *Id*. at 749; *see also Nami,* 554 S.W.3d at 336 (holding that the economic loss rule applies to actions for fraud that are "indistinguishable" from a breach of contract claim).

The majority of Plaintiff's asserted tort claims seek damages for the same economic losses that are alleged in its breach of contract.  Plaintiff's alleged damages are limited to direct and consequential economic losses such as the purchase price of the SmartPucks (Compl. ¶¶ 11–12), the cost of repairs (Compl. ¶ 18), and other consequential economic damages (Compl. ¶ 20).  Plaintiff claims it has suffered reputational damage and has lost business from YESCO as a direct result of the defective SmartPuck products, but it fails to provide any factual support for these claims, leaving them implausible as a matter of law.  *Iqbal*, 556 U.S. at 678.  Moreover, even these damages are the sort of purely economic losses that are not recoverable in tort.  Because Plaintiff's damages allegations are limited to economic losses, it cannot recover in tort.  *See Giddings*, 348 S.W.3d at 733.  Accordingly, as explained more fully, Plaintiff's tort claims for fraud, negligent misrepresentation, product liability, strict liability, negligence, and gross negligence are barred under the economic loss rule.

### A. Plaintiff's Fraud Claim (Count Three) is Barred by the Economic Loss Doctrine.

The Court should dismiss the fraud claim because "[t]he economic loss doctrine precludes a plaintiff from recovering under a fraud theory when that claim is intertwined with a breach of contract claim."  *Westlake Vinyls*, 518 F.Supp.2d at 968.  Here, Plaintiff's fraud claim effectively

9

mirrors its breach of contract claim.  Plaintiff's breach of contract claim relies on the alleged defect that the SmartPucks were not manufactured with IP67 ingress protection as provided in the product specifications (Compl. ¶¶ 16–17, 28), and its fraud claim similarly alleges that Defendant fraudulently represented in the product specification that the SmartPucks would be manufactured with IP67 ingress protection (Compl. ¶ 38).  Other than seeking punitive damages, Plaintiff makes no attempt to distinguish its damages for alleged fraud from its damages from alleged breach of contract.  The Kentucky Supreme Court has barred claims for punitive damages for fraud claims arising from the same economic losses that were the basis for breach of contract claims.  *Nami*, 554 S.W.3d at 336 ("[W]e reiterate the rule in Kentucky to be that [] a plaintiff . . . may not simultaneously recover punitive damages after being made whole on his contractual damages.").

Moreover, Plaintiff's attempts to frame its fraud claim as a fraudulent inducement claim are similarly meritless.  Kentucky courts have repeatedly rejected such claims when the fraudulent inducement claims are indistinguishable from and seek recovery for the same economic losses as the alleged breach of contract.  *See, e.g.*, *New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 413–15 (6th Cir. 2022) (barring fraudulent inducement claims under the economic loss rule because it "attempt[ed] to recover the same damages under both breach of contract and fraudulent inducement"); *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, 161 F.Supp.3d 513, 531 (W.D. Ky. 2015) (barring fraudulent inducement claim where the alleged fraud was "relate[d] solely to condition of the goods, . . . [and thereby] necessarily inextricably intertwined with the contract requirements").  Accordingly, the economic loss rule bars Plaintiff's fraud claim because it is inextricably intertwined with and seeks damages that are indistinguishable from its breach of contract claim.

10

**B. Plaintiff's Negligent Misrepresentation Claim (Count Four) is Barred by the Economic Loss Doctrine.**

Plaintiff's negligent misrepresentation claim is likewise barred by the economic loss doctrine. *Giddings,* 348 S.W.3d at 746 ("[T]he economic loss rule applies to a negligent misrepresentation claim just as it does to negligence and strict product liability claims."). Plaintiff's negligent misrepresentation claim is not distinct from its breach of contract claim. Plaintiff specifically alleges that CleanLife negligently misrepresented that the SmartPucks were made with IP67 ingress protection. Compl. ¶ 49. In its breach of contract claim, Plaintiff alleges that the SmartPucks were defective because they were not made with the contracted for IP67 ingress protection. Compl. ¶¶ 16–17, 28. Plaintiff's negligent misrepresentation claim further fails to identify any damages other than economic losses. *Id*. ¶ 56. Because it relies on the same defect as the contract claim, the negligent misrepresentation claim is inextricably intertwined with the breach of contract claim and barred by the economic loss doctrine. *See, e.g.*, *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, No. 3:09-cv-00644, 2011 WL 5904451, at *2 (W.D. Ky. Nov. 23, 2011) (granting motion to dismiss plaintiff's negligent misrepresentation claim because "plaintiff is pursuing only anticipated economic losses" barred by the economic loss rule).

**C. Plaintiff's Product Liability and Strict Liability Claims (Counts Five and Seven) are Barred by the Economic Loss Doctrine.**

For its product liability claim and strict liability claims, Plaintiff alleges that the SmartPucks were defective because they were not manufactured with IP67 ingress protection, which rendered them "unsafe," causing unspecified damages. Compl. ¶¶ 59, 68–71. Again, this mirrors Plaintiff's claim for breach of contract. *See id*. ¶¶ 16–17, 28. Further, these tort claims identify only economic losses. The Kentucky Supreme Court has barred recovery of such kinds of product and strict liability claims under the economic loss rule. *Giddings,* 348 S.W.3d at 738 ("Thus, costs for repair or replacement of the product itself, lost profits and similar economic losses

11

***cannot be recovered pursuant to*** negligence or ***strict liability theories*** but are recoverable only under the parties' contract, including any express or implied warranties." (emphasis added)). Accordingly, Plaintiff's product liability and strict liability claims should be dismissed.

### D. Plaintiff's Negligence and Gross Negligence Claims (Counts Eight and Nine) are Barred by the Economic Loss Doctrine.

Plaintiff's negligence and gross negligence claims are also barred under the economic loss rule. Again, Plaintiff bases its claims on the allegation that the SmartPucks were defective because they were not manufactured with IP67 ingress protection. *See* Compl. ¶ 74. Plaintiff alleges damages without specifying any non-economic losses allegedly suffered because of Defendant's alleged negligence. *See id.* ¶ 79. Plaintiff's negligence claim is therefore squarely barred by the economic loss rule. *See Giddings,* 348 S.W.3d at 738 (Ky. 2011) ("Thus, costs for repair or replacement of the product itself, lost profits and similar economic losses ***cannot be recovered pursuant to negligence*** or strict liability theories ***but are recoverable only under the parties' contract, including any express or implied warranties***." (emphasis added)).

Under Kentucky law, the only difference between negligence and gross negligence is whether the degree of negligence alleged rises to "wanton or reckless disregard for the lives, safety or property of other persons." *Horton v. Union Light, Heat & Power Co.,* 690 S.W.2d 382, 389 (Ky. 1985). Accordingly, like negligence claims, economic losses for gross negligence claims are barred by the economic loss rule. *See Smith v. Am. Strategic Ins. Corp.,* No. 4:24-cv-00079, 2025 WL 2073813, at *7 (W.D. Ky. July 23, 2025) (dismissing plaintiff's negligence claim as "barred by the economic loss doctrine" because "[t]he damages suffered from this alleged breach [of duty] are the same damages that the [plaintiff] would recover from their breach of contract claim"); *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.,* 276 F.3d 845, 847, 853 (6th Cir. 2002) (affirming order granting defendant summary judgment on plaintiff's negligence and gross

12

negligence claims under economic loss rule).  Therefore, Plaintiff's claims for negligence and gross negligence should be dismissed.

### III. Plaintiff's Tort Claims Should Be Dismissed for Failure to State a Claim (Counts Two, Three, Four, Five, Seven, Eight, Nine, Ten, Eleven, and Twelve).

Even if Plaintiff's tort claims were not barred by the economic loss rule, they would still be subject to dismissal for failure to state a claim under the applicable pleading standards.  Each count is addressed in turn.

### A.  Plaintiff Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Two).

Kentucky law implies a covenant of good faith and fair dealing in all contracts that "impose[s] on the parties thereto a duty to do everything necessary to carry them out." *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 196 (6th Cir. 2015) (internal quotations and citation omitted).  However, under Kentucky law, an independent claim for breach of this implied covenant "is only permitted where there is a special relationship between the parties and where distinct elements are present, such as: unequal bargaining power, vulnerability, and trust among the parties; nonprofit motivations for contracting (e.g., peace of mind, security); and inadequacy of standard contract damages." *Id*. (internal quotations and citation omitted).

Plaintiff has failed to allege an independent tort claim for the alleged breach of the implied covenant of good faith and fair dealing.  Plaintiff has not alleged that the parties are in a special relationship nor has it pled any "distinct elements" like unequal bargaining power.  Compl. ¶¶ 32–35.  Rather, Plaintiff's claim is a mere rehash of its breach of contract claim.  Accordingly, Plaintiff fails to state a claim for breach of the implied covenant of good faith and fair dealing.

In addition, the claim fails for the separate and independent reason that it is duplicative of Plaintiff's breach of contract claim.  *See Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop. Corp.*, No. 5:15-cv-00045-TBR, 2015 WL 4464105, at *4 (W.D. Ky. July 21, 2015)

13

("Time Warner claims several of Pennyrile's actions violate the implied covenant of good faith. Two of these actions—failure to provide proper notice and failure to properly terminate—repeat Time Warner's breach of contract claim and are barred as duplicative."). Under Kentucky law, "[w]here a contractual party is merely seeking to reap the benefits of its contractual bargain, the implied covenant breach claim will not lie as it is considered duplicative of the breach of . . . contract claim." *Id.* (quotations omitted).

Plaintiff bases its claim for breach of the implied covenant of good faith and fair dealing on CleanLife allegedly delivering defective SmartPucks that failed to meet the required product specifications, namely IP67 ingress protection. *See* Compl. ¶ 34. This is identical to the basis for Plaintiff's breach of contract claim. *See id.* ¶¶ 16–17, 28. Accordingly, Plaintiff's duplicative claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law.

**B. Plaintiff Fails to State a Claim for Fraud (Count Three).**

A party alleging fraud must meet the heightened pleading standard, which requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "At a broad level, Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud." *New London Tobacco*, 44 F.4th at 411 (internal quotations and citations omitted). "More specifically, the complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, . . . (4) explain why the statements were fraudulent . . .[, (5)] describe the fraudulent scheme and [(6)] the resulting injury." *Id.* (internal quotations and citations omitted). Plaintiff's fraud allegations fall well short of the Rule 9(b)'s heightened pleading standard because they fail to identify the fraudulent statements, who made the statements, where and when the statements were made, why the statements were fraudulent, and how Plaintiff was injured by the alleged fraud.

14

First, the closest Plaintiff comes to specifying a fraudulent statement is its allegation that "Cleanlife made representations to Glantz about the product specifications for the SmartPucks at issue, namely that the SmartPucks would be made according to the industry's IP67 ingress protection standard . . .". Compl. ¶ 38. This allegation is insufficient because Plaintiff fails to state with *particularity* the allegedly fraudulent statement. Instead, Plaintiff makes generalized statements about the product specifications without pointing to a specific fraudulent statement that was made. *See Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (holding that the heightened pleading requirements of Rule 9(b) require "precisely [identifying] what statements were made in what documents or oral representations"). These generalized allegations do not satisfy Rule 9(b).

Second, Plaintiff fails to identify the person that allegedly made the (unspecified) fraudulent statement. Plaintiff simply refers to CleanLife generally as making a fraudulent statement. *See* Compl. ¶¶ 37–38. This is insufficient as a matter of law. *See New London Tobacco*, 44 F.4th at 411 (rejecting the plaintiff's fraud allegations for generally alleging that the corporate defendant made the fraudulent representation).

Third, Plaintiff failed to identify where or when the statements were made. Plaintiff's fraud claim is facially devoid of any factual allegation relating to where or when the allegedly fraudulent representations were made.

Fourth, even if Plaintiff alleged that CleanLife made a statement that "the SmartPucks would be made according to the industry's IP67 ingress protection standard," Compl. ¶ 38, Plaintiff's fraud claim still fails because Plaintiff does not sufficiently allege why such a statement was fraudulent. Like the plaintiff in *New London Tobacco*, Plaintiff's only theory of fraud is that Defendant "had no intention of actually manufacturing and delivering goods that met the

15

represented specifications." Compl. ¶ 39. This is insufficient as a matter of law because Plaintiff offers no factual allegations "distinguish[ing] between the contractual duties that [Defendant] intended to keep and the contractual duties it allegedly offered in bad faith." *New London Tobacco*, 44 F.4th at 412.

Fifth, Plaintiff failed "to plead specific damages that it suffered by relying on [Defendant's alleged] misrepresentation." *Id.*; *see Eifler v. Greenamyer*, No. 2017-CA-000079, 2019 WL 2712618, at *6 (Ky. Ct. App. June 28, 2019) (holding the complaint was deficient because it "contain[ed] no specific damages [the plaintiff] suffered by allegedly relying upon the allegedly fraudulent promises"). As explained in detail above, all of Plaintiff's alleged damages for its fraud claim are actually economic losses stemming from the breach of contract.

Accordingly, for the foregoing reasons, Plaintiff's fraud claim should be dismissed as it does not meet Rule 9(b)'s heightened pleading standard.

### C. Plaintiff Fails to State a Claim for Negligent Misrepresentation (Count Four).

Negligent misrepresentation allegations must be pleaded with particularity to satisfy Rule 9(b)'s heightened pleading standard. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 248 (6th Cir. 2012). To plead a negligent misrepresentation claim a plaintiff must allege: "1) the transaction at issue is one in which the defendant had a pecuniary interest; 2) the defendant supplied false information; 3) the information was supplied for others' guidance in their business transactions; 4) the defendant failed to exercise reasonable care in communicating the information; 5) the plaintiff acted in reliance thereon; and 6) the false information caused injury." *Helton v. Am. Gen. Life Ins. Co.*, 946 F.Supp.2d 695, 707 (W.D. Ky. 2013).

Similar to its fraud claim, Plaintiff fails to state with particularity the who, what, when, where, and how of its negligent misrepresentation claim. *See New London Tobacco*, 44 F.4th at

16

411; *Sims v. Atrium Med. Corp.*, 349 F.Supp.3d 628, 644 (W.D. Ky. 2018) (finding that plaintiff failed to state a claim for negligent misrepresentation under Rule 9(b) because it did "not specifically identify the statements at issue or allege, beyond highly generalized allegations, when or where the alleged statements were made").  Plaintiff does not identify a specific misrepresentation, who made the alleged misrepresentation, or when said misrepresentation was made.  Instead, Plaintiff merely alleges "numerous misrepresentations" that are not specified. Compl. ¶ 49.  Additionally, Plaintiff alleges that Defendant "conceal[ed] material facts related to the product at issue" that are not specified.  *Id.*  It is well-settled law, however, that a claim for negligent misrepresentation "requires an affirmative false statement; a mere omission will not do." *Giddings*, 348 S.W.3d 729 at 746.  Because Plaintiff's negligent misrepresentation claim lacks allegations of specific affirmative false statements, it should be dismissed for failure to satisfy Rule 9(b)'s heightened pleading standard.

Plaintiff's negligent misrepresentation claim further fails because it asserts that Defendant made its allegedly negligent misrepresentation with the intent of "induc[ing] Plaintiff into entering into the" contracts.  Compl. ¶ 49.  Such an allegation is insufficient to support a negligent misrepresentation claim, which "requires that the person who made the statement failed to exercise reasonable care or competence to obtain or communicate true information."  *PCR Contractors, Inc. v. Danial*, 354 S.W.3d 610, 618 (Ky. Ct. App. 2011).  Indeed, even if such an allegation were made here, it would contradict Glantz's fraud claim as one cannot both negligently and intentionally make a misrepresentation of fact, as Plaintiff alleges (and not in the alternative). Accordingly, Plaintiff's negligent misrepresentation claim should be dismissed because "a party's intent to perform a promise or an agreement cannot form the basis of a negligent misrepresentation claim . . .".  *PCR Contractors*, 354 S.W.3d at 618.

### D. Plaintiff Fails to State Claims for Product Liability or Strict Liability (Counts Five and Seven).

Plaintiff's claims for product liability and strict liability are effectively identical; therefore, CleanLife addresses these claims together.  Under Kentucky law, a "product liability action" includes "any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, [etc.]."  Ky. Rev. Stat. § 411.300.

> [T]o prevail in a strict products liability action, a plaintiff must show: (1) that there is a product, which is (2) in a defective condition unreasonably dangerous to the user or consumer or his property, and (3) which reaches the user or consumer without substantial change in the condition in which it is sold; (4) that the product is sold by one who is engaged in the business of selling such a product which (5) ***results in physical harm to the ultimate user or consumer or his property***.

*Bosch v. Bayer Healthcare Pharms., Inc.*, 13 F.Supp.3d 730, 740 (W.D. Ky. 2014) (emphasis in original) (internal quotations omitted).  Plaintiff's product and strict liability claims fail because Plaintiff has failed to plead physical harm to a user or consumer or its property, apart from the damage to the SmartPucks themselves.

Kentucky courts have consistently affirmed dismissals of product liability claims where no injury or property damage, apart from the product itself, was alleged.  *See, e.g.*, *Bowling Green Mun. Utilities v. Thomasson Lumber Co.*, 902 F.Supp. 134, 137–39 (W.D. Ky. 1995) (granting motion to dismiss tort claims "under either theories of negligence or strict liability" related to defective product itself); *see also Falcon Coal Co. v. Clark Equip. Co.*, 802 S.W.2d 947, 948 (Ky. Ct. App. 1990) (affirming trial court's granting of summary judgment that plaintiff could not recover from a manufacturer "in a product liability tort action based upon the doctrine of strict liability where the subject damage is limited to the product itself"). Plaintiff's product and strict liability claims are facially devoid of any claims of physical harm to a user or consumer of the SmartPucks or its property.  *See* Compl. ¶¶ 62, 71. Instead, the only damage to property that Plaintiff alleges is the damage to the SmartPucks from an alleged defect that caused the ingress of

18

water. *Id.* ¶¶ 59–60, 68–69. This is insufficient as a matter of law. *See Giddings*, 348 S.W.3d at 738 ("[A] manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself."). Accordingly, Plaintiff fails to state a cognizable claim of product liability and strict liability.

**E. Plaintiff Fails to State Claims for Negligence or Gross Negligence (Counts Eight and Nine).**

As discussed above, the only difference between the elements of a negligence and a gross negligence claim under Kentucky law is whether the degree of negligence alleged rises to "wanton or reckless disregard for the lives, safety or property of other persons." *Horton*, 690 S.W.2d at 389. To state a cause of action based on negligence, a complaint must allege: (1) that the defendant owed a duty of care, (2) that the defendant breached that duty, and (3) that a causal connection exists between the breach and an injury. *Carruthers v. Edwards*, 395 S.W.3d 488, 494 (Ky. Ct. App. 2012); *see also Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016) (treating "damages" as a fourth element).

Plaintiff's negligence and gross negligence claims fail because Plaintiff does not identify a duty of care independent of the contract that CleanLife allegedly breached. Plaintiff's Complaint merely alleges a contractual duty to "ensure that the SmartPucks were manufactured according to specifications." Compl. ¶ 75. As a result, its negligence claim fails as a matter of law. *See Nami*, 554 S.W.3d at 336 ("A breach of duty which arises under the provisions of a contract between the parties must be addressed under contract, and a tort action will not lie. A breach of a duty *arising independently* of any contract duties between the parties, however, may support a tort action." (emphasis in original)); *Nelson v. Columbia Gas Transmission, LLC.*, 808 F.App'x 321, 330 (6th Cir. 2020) (holding that plaintiff could not maintain a negligence claim because it identified no duty owed by the defendant apart from its contractual duties). In short, Plaintiff's negligence and

19

gross negligence claims are "merely contract claims repackaged as tort claims" and should therefore be dismissed. *Nelson*, 808 F.App'x at 330.

### F. Plaintiff Fails to State a Claim for Interference with Contractual Relations / Prospective Relations (Count Ten).

To plead a tortious interference with contract claim a plaintiff must allege: (1) the existence of a contract, (2) defendant's knowledge of the contract, (3) defendant's intent to cause a breach of that contract, (4) that defendant's actions in fact caused a breach of the contract, (5) that plaintiff suffered damages as a result of the breach, and (6) that defendant enjoyed no privilege or justification for its conduct. *See Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 6–7 (Ky. App. 2012) (citation omitted). To state a claim for tortious interference, a plaintiff must allege that the defendant caused the third party not to perform under the contract. *Id*. Here, Plaintiff has made no such allegation. Plaintiff merely alleges that its "contractual relations" with unspecified third parties were "disrupted." Compl. ¶ 83. Because Plaintiff has not alleged that CleanLife's conduct caused a breach of any contract, it is insufficient as a matter of law. *See, e.g.*, *Brake Parts, Inc. v. Lewis*, No. 09-cv-00132-KSF, 2011 WL 42973, at *2 (E.D. Ky. Jan. 6, 2011) (citing *CMI, Inc. v. Intoximeters, Inc.*, 918 F.Supp. 1068, 1079 (W.D. Ky. 1995)) (dismissing counterclaim for intentional interference with contractual relations because counterclaimant failed to allege breach of a contract).

Plaintiff's claim for tortious interference with prospective relations fares no better. *Cf.* Compl. ¶ 82 (referencing unspecified "prospective" relationships). To plead tortious interference with prospective business relations, Plaintiff must plead: (1) the existence of a valid business relationship or expectancy; (2) that CleanLife was aware of this relationship or expectancy; (3) that CleanLife intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages. *See Snow Pallet*, 367 S.W.3d at 6. Plaintiff has failed to

20

meet these pleading requirements.  Plaintiff's allegations are nothing more than "allegations [that] consist of speculation, supposition, and inference and do not have sufficient factual or legal basis . . .".  *Rouse v. Farmer*, No. 2015-CA-001626-MR, 2018 WL 2078030, at \*5 (Ky. Ct. App. May 4, 2018) (holding trial court did not err in dismissing tortious interference claim).

Plaintiff summarily alleges that CleanLife "intentionally or negligently" interfered with Plaintiff's relationship with YESCO by supplying defective products.  Compl. ¶ 82.  Plaintiff further alleges—based on belief—that CleanLife's alleged motivation for supplying the defective products was to harm Plaintiff's relationship with YESCO related to Plaintiff's product quality, which would then allow CleanLife to have an unfair business advantage over Plaintiff with YESCO and other potential customers.  *See* Compl. ¶ 22.  This theory is implausible as it suggests that CleanLife supplied defective products through Plaintiff to YESCO as part of a plan to sell direct to YESCO in the future.  YESCO is aware that CleanLife is the manufacturer of the SmartPucks at issue, so it is preposterous that CleanLife could secure business directly from YESCO by supplying it defective products.  Plaintiff further fails to allege that the alleged wrongful conduct—"willfully, knowingly, and negligently manufacturing and supplying defective SmartPucks" (Compl. ¶ 82)—caused any interference with Plaintiff's relationship with YESCO.  Indeed, Plaintiff's interference claims are devoid of any alleged harm to that relationship.

Accordingly, Plaintiff has failed to plead sufficient factual allegations of CleanLife's alleged motivation for intentionally interfering with Plaintiff's relationship with YESCO, that CleanLife's conduct caused the interference with Plaintiff's relationship with YESCO, and damages suffered as a result of this interference.  Plaintiff's threadbare recitations are insufficient, and Plaintiff's claim for interference with prospective relations should therefore be dismissed.  *See,*

21

*e.g.*, *Rouse*, 2018 WL 2078030, at *5 (affirming order granting motion to dismiss as to tortious interference with business advantage claim).

### G. Plaintiff Fails to State a Claim for Comparative and Equitable Indemnity (Count Eleven).

The Kentucky Supreme Court has held that equitable indemnity is available to one who is compelled to pay damages to an injured party under two scenarios: (1) where the party claiming indemnity incurred liability for another's tort without personal fault (e.g., a vicariously liable master), or (2) where both parties were at fault, but the indemnitor's fault was the primary and efficient cause of the injury. *See Degener v. Hall Contracting Corp*, 27 S.W.3d 775, 780 (Ky. 2000). Crucially, the party seeking indemnity must be one that is compelled to pay damages to the injured party, thereby meaning actual tort liability to a third party is a threshold prerequisite. *Id.*; *see also Thompson v. Budd Co.*, 23 F.App'x 239, 242 (6th Cir. 2001) ("[A] party cannot recover under a common law indemnity claim if it has not been held liable to a third party.").

Plaintiff's claim for comparative and equitable indemnity makes no allegation that it has been held liable to either YESCO or Mystic Lake for damages in tort or otherwise. Rather, Plaintiff is asking the Court to preemptively indemnify Plaintiff for damages to YESCO and Mystic Lake that it has not yet suffered. Plaintiff's failure to specify that it has been compelled to pay damages to YESCO or Mystic Lake is fatal to its comparative and equitable indemnity claim. Accordingly, Plaintiff's claim for comparative and equitable indemnity should be dismissed.

### H. Plaintiff Fails to State a Claim for Declaratory Judgment (Count Twelve).

Finally, the Court should dismiss Count Twelve for declaratory judgment because the Court should decline to exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. Courts have "unique and substantial discretion" in deciding whether to award declaratory relief, and the Sixth Circuit has identified five factors the Court should consider:

22

(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata[";] (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Scottsdale Ins. Co. v. Seven Ctys. Servs., Inc.*, No. 3:23-cv-00357-DJH-CHL, 2025 WL 2337961, at *4 (W.D. Ky. Aug. 13, 2025) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008)).  As relevant to the first, second, and fifth factors, declaratory judgments "do not serve a useful purpose in coercive tort actions[ ] or in contract claims where the historical incidents giving rise to liability are finished."  *Id.* (quoting *Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop. Corp.*, No. 5:15-cv-00045-TBR, 2015 WL 4464105 at *8 (W.D. Ky. July 21, 2015)).  "For this reason, 'courts routinely dismiss the declaratory judgment claim when the facts at hand have already ripened into a cause of action for breach.'" *Id.* (quoting *Moser v. Menard, Inc.*, No. 1:20-cv-796, 2023 WL 5979263, at *3 (S.D. Ohio Sept. 13, 2023)).

Here, Plaintiff's claimed declaratory relief is "related to the Glantz PO and Cleanlife's manufacture and delivery of defective S[m]artPucks to Glantz" under that contract.  Compl. ¶ 92. But CleanLife's manufacturing and delivery of the SmartPucks has already happened.  *See* Compl. ¶ 14.  Any issue regarding CleanLife's obligations under the Glantz PO would be best resolved in a breach of contract action which could provide a more effective remedy if Plaintiff were able to state a claim.  Courts routinely dismiss declaratory judgment counts under these circumstances as duplicative.  *See, e.g.*, *Hensyn Res. LLC v. Horizon Mining LLC*, No. 22-cv-00085-DLB, 2023 WL 6217348, at *2 (E.D. Ky. Sept. 25, 2023) (dismissing declaratory judgment count with prejudice; "[s]ince the adjudication of its breach of contract claim will necessarily decide 'the status of the contractual relationship,' declaratory judgment on the same issue is unnecessary and duplicative"); *Scottsdale Ins.*, 2025 WL 2337961, at *4 ("The Court will therefore dismiss the insurers' claim for

23

declaratory relief and instead consider only Seven Counties' claims for breach of contract."); *Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, 484 F.Supp.3d 492, 506 (E.D. Mich. 2020) ("Ultimately, this opinion dismissing Plaintiff's claims for breach of contract will clarify the parties' rights under the Policy as meaningfully as any declaratory judgment would have. Allowing Plaintiff to continue seeking declaratory relief would be nonsensical.").

For these reasons, Count Twelve of the Complaint should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendant CleanLife respectfully requests that the Motion to Dismiss be granted, and that the Complaint be dismissed with prejudice.

DATED: July 2, 2026                    Respectfully submitted,

*/s/ F. Maximilian Czernin*
F. Maximilian Czernin (KY 93674)
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth St., Suite 1900
Cincinnati, OH 45202
Phone: (513) 361-1200
Email: max.czernin@squirepb.com

B. Scott Jones
REMINGER CO., LPA
730 West Main Street, Suite 300
Louisville, KY 40202
Phone: (502) 625-7292
Email: sjones@reminger.com

***Counsel for Defendant CleanLife Energy LLC***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 2, 2026, a true copy of the foregoing instrument was served via the Court's CM/ECF system to all counsel of record.

/s/ F. Maximilian Czernin
F. Maximilian Czernin

24