**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

| | |
|---|---|
| N. GLANTZ & SON, LLC,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>CLEANLIFE ENERGY LLC; and<br>DOES 1 TO 50,<br><br>　　　　　　Defendants. | Case No. 3:26-cv-00454<br><br><br>Hon. Judge Greg N. Stivers |

**PLAINTIFF N. GLANTZ & SON, LLC'S RESPONSE IN OPPOSITION TO
DEFENDANT CLEANLIFE ENERGY LLC'S MOTION TO DISMISS**

Respectfully submitted,

*/s/ Christopher E. Schaefer*
Christopher E. Schaefer, Esq.
Gordon J. Stock, Esq.
STOLL KEENON OGDEN PLLC
400 West Market St., Suite 2700
Louisville, KY 40202
Tel: (502) 333-6000
christopher.schaefer@skofirm.com
gordon.stock@skofirm.com

AND

Daniel Yu, Esq. (*pro hac vice*)
KAHANA & FELD LLP
2603 Main Street, Suite 900
Irvine, CA 92614
Tel: (949) 812-4781
dyu@kahanafeld.com

*Counsel for Plaintiff N. Glantz & Son, LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 3

LEGAL STANDARD................................................................................................................ 4

ARGUMENT ........................................................................................................................... 5

    I.    Glantz's Claims are not Barred by the Express Warranty because the Pleadings Raise a Plausible Factual Dispute that the Factfinder must Resolve...................................................... 5

    II.    The Economic Loss Rule does not Bar Glantz's Claims regarding Other Property, and, Regardless, this Argument is Premature. ..................................................................................... 8

        A.    Fraud Claims are Expressly Distinguished from, and Outside of, the Economic Loss Rule. ..................................................................................................................................... 10

        B.    Glantz's Remaining Claims Survive because They Address Damages to Other Property. ................................................................................................................................ 11

    III.    All of Glantz's Non-Conceded Claims State a Plausible Claim upon which Relief can be Granted. ..................................................................................................................................... 14

        A.    Glantz's Claim for Breach of the Covenant of Good Faith and Fair Dealing (Count Two) is Plausibly Pled and is also Pled in the Alternative to Other Claims......................... 14

        B.    Glantz's Claims for Fraud (Count Three) and Negligent Misrepresentation (Count Four) Allege the Time, Place, and Manner of CleanLife's Misconduct............................... 16

        C.    Counts Five, Seven, Eight, and Nine Identify Plausible Claims for Relief because of Damage to Other Property. .................................................................................................... 17

        D.    Glantz's Contractual Interference Claim (Count Ten) Pleads a Plausible Claims for Relief..................................................................................................................................... 18

    IV.    Even if any claims fail, Plaintiff should be given leave to amend............................... 20

CONCLUSION........................................................................................................................ 20

## **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 2, 4, 5, 6, 18

*Ashland Inc. v. Oppenheimer & C*o., 689 F. Supp. 2d 874 (E.D. Ky. 2010), *aff'd,* 648 F.3d 461 (6th Cir. 2011).................................................................................................................. 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 5, 16

*Boardman Steel Fabricators, Ltd. v. Andritz, Inc*., No. CIV. 14-2-GFVT, 2014 WL 2159743 (E.D. Ky. May 23, 2014) ...................................................................................................... 15

*Bowling Green Mun. Utilities v. Thomasson Lumber Co.,* 902 F. Supp. 134 (W.D. Ky. 1995) .. 12

*Burkhead & Scott, Inc. v. City of Hopkinsville*, No. 5:12-CV-00198-GNS-LLK, 2016 WL 337768 (W.D. Ky. Jan. 27, 2016), *aff'd,* 666 F. App'x 407 (6th Cir. 2016) ........................................ 19

*Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.,* 161 F. Supp. 3d 513 (W.D. Ky. 2015) ..................................................................................................................................... 9

*Columbia Nat. Res., Inc. v. Tatum,* 58 F.3d 1101 (6th Cir. 1995) .................................................. 5

*Country Clubs, Inc. v. Allis-Chalmers Mfg. Co.*, 430 F.2d 1394 (6th Cir. 1970).......................... 8

*Deom v. Walgreen Co.*, 591 F. App'x 313 (6th Cir. 2014)........................................................... 16

*Dippin' Dots, LLC v. Travelers Prop. Cas. Co. of Am.,* 353 F. Supp. 3d 631 (W.D. Ky. 2018) ... 8

*E. River S.S. Corp. v. Transamerica Delaval, Inc*. 476 U.S. 858 (1986) ..................................... 12

*EEOC v. Ohio Edison Co.,* 7 F.3d 541 (6th Cir.1993) ................................................................. 20

*Elec. Merch. Sys. LLC,* 58 F.4th at 882 ...................................................................................... 17

*Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278 (6th Cir. 2010) ...................................................... 4

*Finishmaster, Inc. v. Richard's Paint & Body Shop, LLC*, 2012 WL 2376218 (W.D. Tex. June 22, 2012) .................................................................................................................................... 13

*Frank v. Dana Corp.,* 547 F.3d 564 (6th Cir. 2008)..................................................................... 16

*Giddings & Lewis, Inc. v. Indus. Risk Ins.,* 348 S.W.3d 729 (Ky. 2011) ................. 8, 9, 10, 11, 12

*Hanover Specialties, Inc. v. Les Revêtements Polyval Inc.,* No. 19CV3732KAMCLP, 2021 WL 964970 (E.D.N.Y. Mar. 15, 2021) ...................................................................................... 13

*Henderson v. Skyview Satellite Networks, Inc.*, 474 F. Supp. 3d 893 (W.D. Ky. 2020) .............. 19

*In re Porsche Cars N. Am., Inc.,* 880 F. Supp. 2d 801 (S.D. Ohio 2012)......................................6

*Kinslow v. Fifth Third Bank, Inc.*, 529 F. App'x 467 (6th Cir. 2013) ............................................4

*Mead Corp. v. McNally-Pittsburgh Mfg. Corp.*, 654 F.2d 1197 (6th Cir. 1981)............................7

*Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, No. 3:09-CV-644-S, 2011 WL 5904451 (W.D. Ky. Nov. 23, 2011) ...............................................................................................................9

*Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.,* 276 F.3d 845 (6th Cir. 2002) ..... 9

*Nami Res. Co., LLC v. Asher Land & Min., Ltd.*, 554 S.W.3d 323 (Ky. 2018)................... 8, 9, 10

*Nazareth Int'l, Inc. v. J.C. Penney Corp.*, No. Civ.A. 304CV1265M, 2005 WL 1704793 (N.D. Tex. July 19, 2005)......................................................................................................................... 13

*New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.,* No. 6:12-CV-91-GFVT-HAI, 2019 WL 5107105 (E.D. Ky. June 26, 2019), *report and recommendation adopted as modified,* No. 6:12-CV-00091-GFVT-HAI, 2019 WL 4597500 (E.D. Ky. Sept. 23, 2019), *aff'd in part, vacated in part, remanded*, 44 F.4th 393 (6th Cir. 2022), and *vacated in part,* No. 6:12-CV-00091-GFVT-HAI, 2023 WL 5617747 (E.D. Ky. Aug. 30, 2023) ......................................................... 9, 10, 11

*Newberry v. Silverman*, 789 F.3d 636 (6th Cir. 2015).................................................................. 20

*O'Hara v. Laurel Cty. Corr. Ctr.*, No. 6:23-CV-026-CHB, 2023 WL 5729212 (E.D. Ky. Sept. 5, 2023) ........................................................................................................................................... 15

*Roach v. Hedges*, 419 S.W.3d 46 (Ky. App. 2013) ...................................................................... 15

*Smith v. Am. Strategic Ins. Corp.,* No. 4:24-CV-00079-RGJ, 2025 WL 2073813 (W.D. Ky. July 23, 2025) ......................................................................................................................................... 9

*Smith v. Positive Prods.* 419 F. Supp. 2d 437 (S.D.N.Y. 2005) ................................................... 13

*Solo v. United Parcel Serv. Co.*, 819 F.3d 788 (6th Cir. 2016) ............................................... 5, 14

*State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189 (6th Cir. 2015) ................................ 15

*Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop. Corp.,* No. 5:15-CV-45-TBR, 2015 WL 4464105 (W.D. Ky. July 21, 2015) ......................................................................... 15

*Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607 (N.D. Ohio 2016) ............................................ 8

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 342 F.3d 634 (6th Cir. 2003) ........................... 20

*United States ex rel. Dunn v. Procarent, Inc.,* 615 F. Supp. 3d 593 (W.D. Ky. 2022) ............... 16

*United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 405 n.2 (6th Cir. 2016) .......................................................................................................................................................... 6

*Waste Mgmt. of Texas, Inc. v. Texas Disposal Sys. Landfill, Inc.,* 434 S.W.3d 142 (Tex. 2014). 13

*Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452 (6th Cir. 2011)..... 4

*Westlake Vinyls, Inc. v. Goodrich Corp.,* 518 F. Supp. 2d 955 (W.D. Ky. 2007) .......................... 9

**Statutes**

Fed. R. Civ. P. 12(b)(6) ........................................................................ 1, 2, 4, 5, 6, 8, 9, 14, 17, 18

Fed. R. Civ. P. 8(a)(2) ............................................................................................ 4, 5, 10, 16, 19

Fed. R. Civ. P. 9(b) .................................................................................................................. 1, 2, 16

**INTRODUCTION**

Defendant CleanLife Energy LLC ("CleanLife") claims that this is a garden variety commercial dispute, but it is not that. In reality, it concerns complex tort claims centering on the question of whether CleanLife purposefully and fraudulently delivered component products for a specific purpose that could never have fulfilled the purported purpose for which they were sold. CleanLife claims that Plaintiff N. Glantz & Son, LLC's ("Glantz") allegations are overpled or exaggerated, but CleanLife misapprehends the standard under Fed. R. Civ. P. 12(b)(6) ("Rule 12"), as well as the limitations of Fed. R. Civ. P. 9(b) ("Rule 9(b)"). As described herein, there exists an actual dispute between Glantz and CleanLife, as shown through Glantz's well-pleaded allegations in the Complaint, and Glantz has stated claims against CleanLife that are plausible on their face. Accordingly, the Court should deny CleanLife's Motion to Dismiss.

First, the limitation of remedies alleged by CleanLife is a live dispute and not settled, contrary to its unsupported claims otherwise. A battle of the forms likely exists, which can only be adjudicated by a factfinder; consequently, those claims are not ripe for dismissal at the Rule 12 stage of these proceedings.

Second, although CleanLife broadly cites to the limitations imposed by the economic loss rule, it fails to contend with one of the rule's broad exceptions: "other property." The signs damaged by CleanLife's defective SmartPucks are just that; "other property." In any event, the economic loss rule is a tool for summary judgment, and application at the Rule 12 stage, before any discovery has been conducted, would be manifestly premature.

Third, CleanLife claims that several other of Glantz's causes of action fail independently or alternatively to its economic loss rule theory, but its arguments on this point likewise fail. In brief:

1

- Glantz's claim for breach of the implied covenant of good faith and fair dealing (Count Two) is an independent cause of action, and even if it could be considered duplicative in part, it is pled in the alternative to the claims that CleanLife claims it is duplicative of.

- Glantz's claims for fraud (Count Three) and negligent misrepresentation (Count Four) meet Rule 9(b)'s pleading standard and present plausible allegations of fraud, which is all that is required at this stage in the proceedings. Further, Count Four is an alternative theory to Glantz's breach of contract claims and is not duplicative.

- Glantz's claims for product liability (Count Five), strict liability (Count Seven), negligence (Count Eight), and gross negligence (Count Nine) plausibly plead claims that a Court can remedy. CleanLife misapprehends the standard set forth by the Supreme Court in *Iqbal*, as well as that of Rule 12(b)(6).

- Glantz's claim for tortious interference with contractual relations (Count Ten) also pleads a cognizable claim; additionally, CleanLife's contention that no contract was breached is not supported by the facts or the pleadings.

Fourth, CleanLife improperly places extrinsic evidence before the Court in its Rule 12 Motion to Dismiss and incorrectly claims that this addition is supported by the law. The attachment of the additional—and erroneous—warranty is improper, and the Court should strike it and refrain from considering it in the context of CleanLife's Rule 12 Motion to Dismiss.

Lastly, Glantz concedes that Count Eleven, for comparative and equitable indemnity, is premature, and it does not object to the claim's dismissal *without prejudice*. Similarly, Plaintiff concedes that Count 12, for declaratory judgment, is subsumed by other causes of action, particularly Count One, and it does not object to Count 12's dismissal *without prejudice*.

2

For the reasons stated herein, the Court should deny CleanLife's Motion to Dismiss in its entirety, with the two exceptions of the concessions noted above.

## FACTUAL BACKGROUND

Plaintiff Glantz is a wholesaler of lighting supplies based in Louisville, Kentucky, while Defendant CleanLife is a manufacturer of energy-efficient lighting supplies based in Cleveland, Ohio. (DE 1-1, Compl. ¶¶ 7–8). Nonparty Young Electric Sign Company ("YESCO") is an electric sign designer that designs and manufactures large format signs using LED lighting, like those found on casinos. (*Id.* ¶ 9). Nonparty Mystic Lake Casino Hotel ("Mystic Lake") is a casino located in Prior Lake, Minnesota. (*Id.* ¶ 10).

In 2023, after Mystic Lake contracted with YESCO to design a sign for its casino in Minnesota, YESCO placed an order with Glantz for 6,040 LED lighting components, known as "SmartPucks". (*Id.* ¶ 11). These SmartPucks had very particular specifications: 24-volt, black body, and red face (color: Pantone 186C). (*Id.).* Additionally, according to their product specifications, the SmartPucks were supposed to have an "IP67" rating, which means that they are dust resistant, they can be submerged in one meter of freshwater for up to 30 minutes, and they should last 5.7 years at 24/7 operations. (*Id.* ¶ 16).

To fill YESCO's order for the SmartPucks from Glantz, on or about December 20, 2023, Glantz issued a purchase order to CleanLife for the purchase of 6,040 SmartPucks for the total amount of $111,740.00 (the "Glantz PO"). (*Id.* ¶ 12). In February and March 2024, CleanLife delivered all 6,040 SmartPucks to **YESCO** and invoiced Glantz $111,740.00. (*Id.* ¶ 14). In or around April of 2024, subsequent to YE**S**CO's receipt of SmartPucks, Glantz issued payment in full to CleanLife. (*Id.).* At around that same time, YESCO installed the SmartPucks in the custom sign it had manufactured at Mystic Lake. (*Id.* ¶ 15).

3

On or about August 21, 2025, YESCO informed Glantz that Mystic Lake had made a complaint about some of the lights in the sign going out. (*Id.* ¶ 16). On further examination, some of the SmartPucks that Glantz had purchased from CleanLife had failed. (*Id.*). What is more, after examination and testing, many of the SmartPucks were found to be deficient in manufacture, made with substandard components, and failed to meet the contract's specifications. (*Id.* ¶¶ 17-18). As a result of these deficiencies, YESCO and Mystic Lake's project has undergone significant delays and significant increased costs to nonparties and Glantz. (*Id.*). Glantz has experienced a loss of confidence and business directly due to CleanLife's delivery of substandard and noncompliant product. (*Id.* ¶ 20).

Importantly, the Glantz PO constitutes the complete contract between Glantz and CleanLife, as it expressly disclaims all other agreements. (*Id.* ¶ 13).

<u>**LEGAL STANDARD**</u>

"The complaint need only contain 'a short and plain statement of the claim showing that the pleading is entitled to relief.'" *Kinslow v. Fifth Third Bank, Inc.*, 529 F. App'x 467, 470 (6th Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). "When evaluating a motion to dismiss" under Rule 12, "the court construes the complaint in the light most favorable to the plaintiff, accepts all its allegations as true, and draws all reasonable inferences in favor of the plaintiff." *Id.* (quoting *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 456 (6th Cir. 2011) (cleaned up). "As long as a court can 'draw the reasonable inference that the defendant is liable for the misconduct alleged, a plaintiff's claims must survive a motion to dismiss.'" *Id.* (quoting *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 281 (6th Cir. 2010)); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4

To be sure, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

### ARGUMENT

In its Motion to Dismiss, CleanLife repeatedly attempts to argue the merits of the Action and introduce extrinsic evidence in support of its position, while largely ignoring the actual content of Glantz's Complaint. CleanLife prematurely argues that doctrines like the economic loss rule, something appropriately raised at the Rule 56 stage of the Action, somehow merits dismissal at Rule 12. Not so. In arguing the evidence and otherwise proceeding outside of the Complaint in its Motion to Dismiss, CleanLife misapprehends the limited scope of the Court's review in evaluating a case at the Rule 12 stage. As explained herein, Glantz's Complaint meets Rule 8's pleading standards in all relevant respects, meaning dismissal at this early stage in proceedings would be inappropriate. Thus, the Court should deny CleanLife's Motion to Dismiss.

I.     **<u>Glantz's Claims are not Barred by the Express Warranty because the Pleadings Raise a Plausible Factual Dispute that the Factfinder must Resolve.</u>**

First, CleanLife argues that all of Glantz's claims fail, as the alleged Warranty contains a limitation of remedies. As an initial matter, this argument is premature, as a crucial point of this litigation will likely revolve around a "battle of the forms" between Glantz and CleanLife as to which contract or warranty, if any, controls. Dismissal at the Rule 12 stage is inappropriate where a question of fact exists. *See Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 796 (6th Cir. 2016); *see also Columbia Nat. Res., Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir. 1995) ("Nor may the Court

dismiss based on disbelief of a Plaintiff's factual allegations where they are pled plausible in accordance with *Iqbal*.").

CleanLife attempts to circumvent Rule 12's requirement that decisions at this stage be on the pleadings by improperly attaching extrinsic evidence to its Motion to Dismiss. In doing so, it mischaracterizes *In re Porsche Cars* to argue that a mere reference to a warranty allows it to attach a completely ***different*** alleged warranty to its Motion. *See In re Porsche Cars N. Am., Inc.,* 880 F. Supp. 2d 801, 816 (S.D. Ohio 2012). To be sure, in its Complaint Glantz references promises that CleanLife made regarding the SmartPuck's specifications, but the alleged warranty attached CleanLife's Motion to Dismiss is not even the one at issue, it is merely *one of CleanLife's warranties*. In contrast, in *In re Porsche Cars*, the Southern District of Ohio considered the specific and undisputed warranty at issue in that case. *Id.* Importantly, the alleged warranty attached by CleanLife to its Motion is not the warranty that Glantz references in its Complaint, because Glantz expressly disclaimed all warranties purportedly issued by CleanLife. (*See* DE 1-1, Compl., Ex. A). By contrast, the alleged YESCO warranty attached to CleanLife's Motion to Dismiss falls entirely outside the pleadings, it is not incorporated by reference, and, therefore, the Court should not consider it in adjudicating the instant Motion. *See, e.g.*, *United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 405 n.2 (6th Cir. 2016) ("[M]atters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss….").

At this stage, as evidenced by CleanLife's attempts to introduce new evidence before this Court, there is a live factual dispute as to the contract or language that governs CleanLife's failure to deliver a functional product. Every case to which CleanLife cites in support of the idea that the alleged "warranty" precludes Glantz's claims presupposes that a written warranty existed between the parties. However, Glantz alleges in its Complaint that the Glantz PO is the entire agreement

6

and that no other terms exist or control. (DE 1-1, Compl. ¶¶ 26); (*see* Compl., Ex. A). On the face of the Complaint, the factual allegations of which this Court is required to take as true, the Glantz PO controls, and any "warranty" terms CleanLife alleges are relevant must fail at this early stage. The Glantz PO itself states in relative part:

> All purchase of products and/or services (collectively "Goods") by N. Glantz & Son, LLC, its parent or its affiliates (collectively "Buyer") are expressly subject to and conditioned on the terms and conditions set forth herein and on the front side of Buyer's Purchase Order (collectively "Terms"), and on no other terms and conditions unless expressly agreed to in writing and signed by an officer of Buyer. The seller of the Goods is referred to as "Seller**." Buyer objects to and rejects any terms or conditions in any Invoice issued by Seller that are in addition to or different from these Terms.** If any Invoice is conditioned upon Seller's acceptance of Seller's terms and conditions, and the terms of quantity and price of the Goods set forth in Seller's Invoice for the Goods, then all additional or different terms in Seller's invoice are expressly rejected, and Seller's performance shall create an agreement between Seller and Buyer on these Terms. Seller's agreement to these Terms shall also occur upon Seller's delivery of the Goods. **If any of the Terms are not acceptable, Seller should not deliver the Goods**. Documents attached by Buyer to its orders are part of the Terms. These Terms constitute the entire agreement between the parties. **Seller represents it has approved the Terms after review by its legal counsel or voluntarily waived its right to such a review. If** any Terms are invalid, illegal or unenforceable, then the validity, legality and enforceability of the remaining Terms will not in any way be affected or impaired.

(DE 1-1, Compl., Ex. A, p. 3) (emphasis added).

What is clear from CleanLife's Motion and the Glantz PO is that a live dispute exists which cannot be adjudicated on the pleadings pursuant to Rule 12. Although CleanLife broadly states that its alleged warranty merits the dismissal of Glantz's Complaint, this argument is directly belied by Counts One and Six of the Complaint. To wit, central to Glantz's claims for breach of contract and breach of warranty is the question of which warranty, if any, and which contract applies here. This is an inherently fact-specific inquiry, and one that is not yet ripe for decision. *See Mead Corp. v. McNally-Pittsburgh Mfg. Corp.*, 654 F.2d 1197, 1204 (6th Cir. 1981) ("Whether an additional term in the acceptance works a material alteration must be determined in light of the circumstances

of each case."). Answering the questions surrounding the "Battle of the Forms" is one that requires genuine factual inquiry and development of the record. *See Country Clubs, Inc. v. Allis-Chalmers Mfg. Co.*, 430 F.2d 1394 (6th Cir. 1970) (whether limitation terms bind a buyer is a course-of-dealing/performance question decided on the record).

CleanLife relies on the idea that only limited remedies exist (Glantz disagrees), but even if CleanLife's proposition were true, it poses a factual question not capable of resolution at the Rule 12 stage. To wit, whether a limited remedy fails of its essential purpose is a question of fact that makes dismissal inappropriate. *See Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 615 (N.D. Ohio 2016). Tellingly, CleanLife's own authorities involved relief sought at the summary judgment stage upon a developed record, not on a Rule 12 motion to dismiss. *See Dippin' Dots, LLC v. Travelers Prop. Cas. Co. of Am.,* 353 F. Supp. 3d 631 (W.D. Ky. 2018).

Resolving the dispute into the conflicting forms and their controlling terms requires development of the record and an ultimate determination of which terms controls. All of this means that dismissal is inappropriate at this time.

II.       **The Economic Loss Rule does not Bar Glantz's Claims regarding Other Property, and, Regardless, this Argument is Premature.**

Next, CleanLife cites to two Kentucky cases for the uncontroversial proposition that ***purely*** economic losses to the product itself cannot be recovered via tort claims. *See Giddings & Lewis, Inc. v. Indus. Risk Ins.,* 348 S.W.3d 729 (Ky. 2011)*; Nami Res. Co., LLC v. Asher Land & Min., Ltd.*, 554 S.W.3d 323 (Ky. 2018). Tellingly, however, CleanLife ignores the deeply important "other property" provision of *Giddings* in arguing that the economic loss rule bars Glantz's tort claims*. See* 348 S.W.3d at 738. It is "other property" that is at issue in this Action, namely, the Mystic Lake sign and Glantz's reputation, meaning the economic loss rule does not operate as a bar to any of Glantz's claims connected to those losses.

8

Foremost, application of the economic loss rule is inappropriate at the Rule 12 stage. Indeed, this rule is primarily applied either at the summary judgment stage or later, and certainly after the parties have had a chance to fully develop the record. This is true in nearly every case CleanLife cites. *See Giddings*, 348 S.W.3d at 749 (summary judgment granted and affirmed on appeal); *Nami,* 553 S.W.3d at 328 (trial on the merits, economic loss rule applied on appeal); *Westlake Vinyls, Inc. v. Goodrich Corp.,* 518 F. Supp. 2d 955, 959 (W.D. Ky. 2007) (partial summary judgment granted); *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 399–400 (6th Cir. 2022) (economic loss rule raised on appeal after default judgment); *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.,* 161 F. Supp. 3d 513, 515 (W.D. Ky. 2015) (summary judgment granted on economic loss rule); *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.,* 276 F.3d 845, 847 (6th Cir. 2002). (summary judgment affirmed on appeal).

In fact, of every case cited by CleanLife in support of its economic loss rule argument, only two were dismissed prior to summary judgment, and both are distinguishable from this Action. First, in *Morris Aviation*, the dismissed claim pertained to aircraft engines that were allegedly diminished in *monetary* value by the insolvency of a parent company, *i.e.*, a purely economic loss. *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc*., No. 3:09-CV-644-S, 2011 WL 5904451, at *1-2 (W.D. Ky. Nov. 23, 2011). Second, in *Smith v. American Strategic*, the dismissed claim was for negligence arising from monetary losses surrounding an insurance contract, *i.e.*, another purely economic loss intertwined with the claim for breach of the insurance contract. *See Smith v. Am. Strategic Ins. Corp.,* No. 4:24-CV-00079-RGJ, 2025 WL 2073813 (W.D. Ky. July 23, 2025). In contrast, here, Glantz seeks damages outside of the economic losses resulting from the breach of contract by delivery of a deficient product, ***namely, the significant damage to its reputation and the damage to the sign at Mystic Lake, not just CleanLife's SmartPucks***.

9

The issue is not whether, on the merits, the economic loss rule bars any of the claims; rather, it is whether Glantz's Complaint contains "a short and plain statement of the claim[s] showing that [Glantz] is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2) ("Rule 8"). Cursory review of the Complaint answers this question in the affirmative. For its part, CleanLife fails to contend at all with the reputational harm and other property elements of *Giddings* and its progeny. *Giddings* holds that "[l]osses for injuries to people and to "other property"" in these commercial transactions, remain subject to the traditional product liability theories." *Giddings,* 348 S.W.3d at 738. The "product itself" is the "entire item bargained for by the parties and placed in the stream of commerce." *Id.* at 733. Here, the product itself was simply the SmartPucks. As follows, each claim alleged by CleanLife to be barred by the economic loss rule meets Rule 8's pleading standard, and Glantz addresses each claim in turn.

### A.  Fraud Claims are Expressly Distinguished from, and Outside of, the Economic Loss Rule.

First, *Giddings*, upon which CleanLife places considerable weight to attempt to quash Glantz's fraud claim, expressly reserved the fraud question and distinguished it from other economic losses. *See Giddings*, 348 S.W.3d at 744. Further, *Nami* applied the economic loss rule only to fraud that was "indistinguishable" from breach — it "did not address *fraudulent inducement*." *See New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.,* No. 6:12-CV-91-GFVT-HAI, 2019 WL 5107105, at *15 (E.D. Ky. June 26, 2019), *report and recommendation adopted as modified,* No. 6:12-CV-00091-GFVT-HAI, 2019 WL 4597500 (E.D. Ky. Sept. 23, 2019), *aff'd in part, vacated in part, remanded*, 44 F.4th 393 (6th Cir. 2022), and *vacated in part,* No. 6:12-CV-00091-GFVT-HAI, 2023 WL 5617747 (E.D. Ky. Aug. 30, 2023). A fraudulent inducement claim "involves a breach of a duty that existed prior to and independent from the contract duties," and

10

"most jurisdictions …recognize an exception" that preserves compensatory and punitive damages distinct from the economic loss claims. *Id.* at \*17. A fraud claim survives where the aggrieved party—here, Glantz—suffers "damages that differ from the damages sustained by reason of the breach of contract" and the duty arises "independently of any contract." *Id.* at \*16. The central tenet of Glantz's fraud claim is that CleanLife not only *delivered* deficient products, but it also had a pre-contract intent to never actually deliver a product that conformed to the requisite specifications. In other words, Glantz alleges that CleanLife fraudulently induced Glantz's entry into the Glantz PO by making promises it never intended to fulfill. This constitutes a plausible claim of fraud outside of the Glantz PO, and it is compensable outside of the economic losses that Glantz sustained.

Glantz's negligent misrepresentation claim follows the same analysis. In its Complaint, Glantz alleges that CleanLife never intended to deliver products that were actually IP67 rated but nevertheless represented to Glantz that it would do so. The question of fact connected Counts Three and Four is for the factfinder to determine whether CleanLife's misrepresentations were malicious (Count Three) or purely negligent (Count Four). But in both cases, the damages fall outside of the Glantz PO, and they are compensable by damages separate and apart from Glantz's breach of contract claim, meaning they are not barred by the economic loss rule.

### B. Glantz's Remaining Claims Survive because They Address Damages to Other Property.

Although *Giddings* explains that the economic loss rule bars recovery for economic losses to the "product itself," it does ***not*** bar claims for damage to "other property." *See* 348 S.W.3d at 733 ("Damages for injuries to persons or "other property" may be recovered in tort but a case involving purely economic losses requires resort to the parties' contract and any express or implied

warranties."). In other words, the rule only bars claims for losses to the product itself, which in this case would be the "SmartPucks." *Id.* at 738. ("Thus, costs for repair or replacement of the **product itself**, lost profits and similar economic losses cannot be recovered pursuant to negligence or strict liability theories but are recoverable only under the parties' contract, including any express or implied warranties.") (emphasis added). In *Giddings,* it was the "diffuser cell system," which was the entire machine sold by Giddings; however, the *Giddings* Court declined to reach a decision on the other property associated with the system as it had not been properly preserved for appeal. In a pre-*Giddings* case applying the economic loss rule, where federal courts found themselves predicting how the Kentucky Supreme Court would rule, the Western District of Kentucky found that only the actual utility pole was the product and that only claims related to those poles' malfunctions were barred. *Bowling Green Mun. Utilities v. Thomasson Lumber Co.,* 902 F. Supp. 134, 139 (W.D. Ky. 1995) ("This definition [of other property] includes any property owned by Plaintiff that a defective pole proximately harmed, including any items attached to the poles by Plaintiff or a company other than either Defendant."). In contrast, in a case upon which *Giddings* relies, defective engines harmed only themselves, so the economic loss rule *did* apply. *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 875 (1986).

Here, it was not just the SmartPucks themselves that were damaged. Their deficient design destroyed other property as well, *i.e.*, the Mystic Lake sign and its other component parts. That sign is the "other property" identified in *Giddings*. It is analogous to the hypothetical case where the engines in *East River Steam Ship Corp.* damaged not just themselves, but caused a fire that destroyed the boat, which is property distinct from the engines. When a product damages other property, the damage to that other property is compensable outside of the economic contractual damages.

Further, as identified in the Complaint, Glantz has suffered significant reputational harm, separate and distinct from the business lost from YESCO. (DE 1-1, Compl. ¶ 20). This reputational harm is especially pernicious as it is an ongoing harm that extends far past any purely economic losses; it is the perception of Glantz's trustworthiness and reliability that is at stake here.

Kentucky courts have not yet determined whether reputational harm qualifies as "other property" for the purposes of the economic loss rule. Thus, the law of other jurisdictions is informative on this issue. Texas law treats reputational harm as non-economic for purposes of applying the economic loss rule, reasoning that "[i]njury to one's person, by pain or humiliation, is not analogous to pecuniary loss. Stated differently, money does not equate to peace of mind." *Waste Mgmt. of Texas, Inc. v. Texas Disposal Sys. Landfill, Inc.,* 434 S.W.3d 142, 152 (Tex. 2014). As reputational damages are not purely economic, they are not barred by the economic loss rule. *Finishmaster, Inc. v. Richard's Paint & Body Shop, LLC*, 2012 WL 2376218, at *3 (W.D. Tex. June 22, 2012) ; *see Nazareth Int'l, Inc. v. J.C. Penney Corp.*, No. Civ.A. 304CV1265M, 2005 WL 1704793, at *8 (N.D. Tex. July 19, 2005) ("It is possible for Plaintiff to prove that these alleged injuries [of harm to Plaintiff's business resulting from the alleged negligent misrepresentations] are independent from the subject matter of the contract").

New York state law similarly allows damages for reputational harm, although on a limited exceptional case basis. *Hanover Specialties, Inc. v. Les Revêtements Polyval Inc.,* No. 19CV3732KAMCLP, 2021 WL 964970, at *9 (E.D.N.Y. Mar. 15, 2021); *see Smith v. Positive Prods*. 419 F. Supp. 2d 437, 453 (S.D.N.Y. 2005) ("They are available only in exceptional cases when the plaintiff proves "specific business opportunities lost as a result of its diminished reputation"; vague assertions will not suffice. ") Although Kentucky law has not spoken on the issue, these other jurisdictions show that reputational harm is not always economic.

Here, Glantz identified in its Complaint specific lost business, diminished relations with YESCO, a business with which it had a quality relationship prior to CleanLife's delivery of deficient components for their finished sign. (DE 1-1, Compl. ¶ 20). That is clear reputational harm, compensable as "other property." This reputational harm goes beyond the pure economic losses to the product itself, it is an ongoing harm, nearly unlimited in damages, as YESCO's unease with Glantz could spread around the entire market. Just as the sign is other property, so is Glantz's reputation, meaning damages exist outside of the contract and the economic loss rule is inapplicable.

III.     **All of Glantz's Non-Conceded Claims State a Plausible Claim upon which Relief can be Granted.**

Lastly, ClearLife moves to dismiss a number of counts for failure to state a claim upon which relief can be granted under Rule 12(b)(6). As discussed *infra*, CleanLife misapprehends the limited nature of its Motion and instead attempts to litigate Glantz's claims on their merits at this early stage. This is improper. Each of Glantz's non-conceded claims in the Complaint states a plausible claim upon which relief can be granted, and each count is addressed in turn below.

A. **Glantz's Claim for Breach of the Covenant of Good Faith and Fair Dealing (Count Two) is Plausibly Pled and is also Pled in the Alternative to Other Claims.**

CleanLife alleges that "breach of the covenant of good faith and fair dealing" does not raise a distinct legal claim, but its argument fails for at least two reasons. First, CleanLife argues primarily that the claim is duplicative of other claims, such as Glantz's claim for breach of contract. However, pleading in the alternative is permitted, especially when it may not be clear which contract controls. *See Solo*, 819 F.3d at 796 ("Rule 8(a)(3) permits pleadings in the alternative "when, for instance, there is a dispute between the parties as to whether an express agreement

14

exists.'"") (internal citations omitted); *see also O'Hara v. Laurel Cty. Corr. Ctr.*, No. 6:23-CV-026-CHB, 2023 WL 5729212, at \*7 (E.D. Ky. Sept. 5, 2023) (quoting *Roach v. Hedges*, 419 S.W.3d 46, 49 (Ky. App. 2013) ("[p]leading in the alternative is of course a standard legal practice."). Pleading in the alternative allows Glantz to pursue alternate theories of recovery, even conflicting ones, at this early stage without having had the benefit of discovery. *See Boardman Steel Fabricators, Ltd. v. Andritz, Inc.*, No. CIV. 14-2-GFVT, 2014 WL 2159743, at \*2 (E.D. Ky. May 23, 2014) ("The course of litigation is never certain…Moreover, the Federal Rules of Civil Procedure permit pleading in the alternative and even the pleading of inconsistent claims. Fed. R. Civ. P. 8(e)(2) … We note, however, that [the Plaintiff's] quantum meruit claim is only an alternative theory of recovery permitted by the Federal Rules of Civil Procedure.").

Second, CleanLife argues that claims for breach of the covenant of good faith and fair dealing are not permitted under certain circumstances, such as when the parties have equal bargaining power or when standard contract damages are inadequate, citing to *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 196 (6th Cir. 2015) in support. However, the *Hargis* case pertained to insurer-insured relationships and the establishment of a reverse bad-faith tort claim, not about the question of what the complaint states on its face, as is the case here. In this Action, Glantz's Complaint alleges on its face that standard contract damages are inadequate because CleanLife purposefully perpetrated fraud in the sales of its defective SmartPucks. (DE 1-1, Compl. ¶¶ 40-42). That is facial evidence of bad faith and unfair dealing. Nor is *Time Warner* fatal to Glantz's claim, a case in which the Western District of Kentucky declined to dismiss a breach of covenant of good faith and fair dealing claim *despite the existence of a contract. See Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop. Corp.,* No. 5:15-CV-45-TBR, 2015 WL 4464105, at \*4 (W.D. Ky. July 21, 2015). The implied covenant claim, while *related* to the contract

15

claim, is distinct from it, because it relates to the actual bad faith entry into, and performance of, the Glantz PO, and does not solely concern the breach. *See Deom v. Walgreen Co.*, 591 F. App'x 313 (6th Cir. 2014) ("The implied covenant of good faith and fair dealing requires a party vested with contractual discretion to 'exercise that discretion reasonably and with proper motive, and [not] arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.'"). At this early stage, where CleanLife's motives for delivering a deficient product are unclear, this claim should persist as it is plausibly pled under Rule 8(a)(2).

### B. Glantz's Claims for Fraud (Count Three) and Negligent Misrepresentation (Count Four) Allege the Time, Place, and Manner of CleanLife's Misconduct.

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake."  Rule 9(b)'s purpose is to prevent the particular abuses that may arise when pleading fraud. *See Bell Atl. Corp.,* 550 U.S. at 569 n.14. Particularity requires certain elements of the fraud to appear on the face of the pleading. *Frank v. Dana Corp.,* 547 F.3d 564, 570 (6th Cir. 2008) ("Accordingly, Plaintiffs' complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'").

However, Rule 9(b) complements Rule 8's notice requirements, it does not entirely supplant them. *See, e.g.*, *United States ex rel. Dunn v. Procarent, Inc.,* 615 F. Supp. 3d 593, 608 (W.D. Ky. 2022) ("Instead, Rule 9 "should be interpreted in harmony with Rule 8's statement that a complaint must only provide 'a short and plain statement of the claim' made by 'simple, concise, and direct allegations.'") (internal citations omitted). Moreover, it does not require absolute precision. *Ashland Inc. v. Oppenheimer & Co.*, 689 F. Supp. 2d 874, 883 (E.D. Ky. 2010), *aff'd,* 648

16

F.3d 461 (6th Cir. 2011) ("Although the omission of precise dates is not automatically fatal to the complaint…").

Here, even if imprecise, Glantz has pled all of the required "who," "what," "when," "where," and "why" in Counts Three and Four, as shown on the face of the Complaint. (DE 1-1, Compl. ¶¶ 36-46). For both claims, the "who" is CleanLife. The "what" is CleanLife's representation that its products met the IP67 standard.[1] (*Id.* at ¶¶ 38-40). The "when" is between February 28, 2024 and March 12, 2024, when the products were delivered. (*Id.* at ¶ 37). The "where" is the site of delivery of the SmartPucks. (*Id.)*. And the "why," *i.e.*, the basis for the allegation that the claims were fraudulent, is that CleanLife represented that its product met the IP67 water-ingress standard despite knowing, or negligently failing to understand, that it did not. (*Id.* at ¶¶ 39-42). Glantz has pled all of the requirements of the fraudulent statements with sufficient detail in its Complaint, but even if they are not, Plaintiff moves for leave to amend, *supra.*

### C. Counts Five, Seven, Eight, and Nine Identify Plausible Claims for Relief because of Damage to Other Property.

CleanLife similarly misunderstands the scope of its Motion on Counts Five, Seven, Eight, and Nine. The motion before the court has been made under Rule 12(b)(6), and, thus, the Court is required to take all well-pleaded facts in the Complaint as true in evaluating same. *Elec. Merch. Sys. LLC,* 58 F.4th at 882. CleanLife instead continues to argue the merits and the evidence and treats this as if it were a motion for summary judgment, which it is not. Moreover, it continues to misapprehend the basic fact that Glantz is not simply pleading that CleanLife's deficient product damaged Glantz – the Complaint also alleges that CleanLife damaged other property, namely, the Mystic Lake sign in which the SmartPucks were ultimately installed.

---

[1] IP67 refers to the product's ability to resist dust and water intrusion. (DE 1-1, Compl. ¶ 16)

As discussed *infra,* damage to other property is a valid claim that is legally compensable. The damage to the Mystic Lake sign is distinct from the damage to the SmartPucks themselves, caused by CleanLife's deficient manufacture and/or design. Ultimately, as regards negligence, gross negligence, product liability, and strict liability, the issue before the Court is this: whether the sign is "other property," which is a question of contract construction inappropriate for resolution at the Rule 12 stage. A genuine factual dispute as to the other property damaged exists. Additionally, beyond the physical "other property," Glantz's reputational damage outside of the Glantz POt is a live damage that requires compensation.

Further, also discussed *infra,* dismissal is inappropriate absent a chance for Plaintiffs to amend their claims. Should the Court find that Counts Three and Four fail to state a claim under 12(b)(6), Glantz respectfully moves for leave to amend.

### D. Glantz's Contractual Interference Claim (Count Ten) Pleads a Plausible Claims for Relief.

Lastly, CleanLife has moved to dismiss Glantz's claim for tortious interference with contractual relations. On a Rule 12(b)(6) motion, the alleged motive (damaging Glantz's relationship with YESCO to gain competitive advantage after the S14 dispute) is accepted as true by the Court and accorded all reasonable inferences; plausibility, ***not*** probability, is the test. *Ashcroft*, 556 U.S. at 678. Here, Glantz's tortious interference claim easily meets this standard, and the Court should deny CleanLife's Motion.

First, CleanLife argues that Glantz's tortious interference claim is barred for failure to state an element (notwithstanding Glantz's motion to amend its complaint), based largely on an alleged imprecision of language. In particular, Glantz used the term "disrupt" rather than "breach" in describing the contractual relationships with YESCO and others, which were interfered with by

18

CleanLife's representations regarding, and delivery of, a deficient product. "Breach" is defined as "a violation or infraction of a law, obligation, or agreement." *Breach, Black's Law Dictionary* (10th ed. 2014)*.* "Disrupt" is defined as "to interrupt the normal course or unity of" or "to throw into disorder." *Disrupt*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/disrupt (last visited July 24, 2026). "Disrupt" just as aptly describes CleanLife's tortious interference with Glantz's contractual relations and alleges a breach, albeit in a colloquial fashion.

In any event, Count Ten is primarily centered on CleanLife's tortious interference with *prospective* business relations, a claim that has similar elements to tortious interference with a contract. *See Henderson v. Skyview Satellite Networks, Inc*., 474 F. Supp. 3d 893, 908 (W.D. Ky. 2020). Interference with a *known contractual* relationship requires that it be malicious, without justification, or accomplished by some unlawful means such as fraud, deceit, or coercion. *Burkhead & Scott, Inc. v. City of Hopkinsville*, No. 5:12-CV-00198-GNS-LLK, 2016 WL 337768, at *2 (W.D. Ky. Jan. 27, 2016), *aff'd,* 666 F. App'x 407 (6th Cir. 2016). Glantz's allegations that CleanLife deliberately supplied defective goods to damage the YESCO relationship and gain competitive advantage plead exactly that improper motive/wrongful means, thereby satisfying Glantz's obligations under Rule 8.

Lastly, CleanLife argues that it is "preposterous" to imagine that CleanLife would want to interfere with the YESCO relationship; however, this is not the first issue that Glantz has had with CleanLife products that were ultimately supplied to YESCO. (DE 1-1, Compl. ¶¶ 19-22). On the face of the Complaint, it is plausible that CleanLife resents the middleman role that Glantz takes on between YESCO and CleanLife, and that it acted to disrupt that relationship and otherwise obtain an economic advantage. It is not "preposterous;" it is logical and plausibly pled. Because

19

Count Ten states a claim upon which relief can be granted, the Court should deny CleanLife's Motion.

## IV.    Even if any claims fail, Plaintiff should be given leave to amend.

Further, also discussed *infra,* dismissal is inappropriate absent a chance for Plaintiffs to amend their claims. Should the court find that any of the claims presented fail to state a claim under 12(b)(6), or for any other reason, the Plaintiffs move for leave to amend their claims.

Leave to amend should be freely and liberally granted. *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015) ("[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment.") *See also U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 342 F.3d 634, 644 (6th Cir. 2003) ("'where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." ") (citing *EEOC v. Ohio Edison Co.,* 7 F.3d 541, 546 (6th Cir.1993)).

Plaintiff has not yet amended their complaint, and if the Court finds that any complaint is deficiently plead, Plaintiffs should be given a chance to amend the complaint.

### CONCLUSION

Plaintiff has plausibly pled all claims, while Defendant has overreached and not met their burden to show why dismissal is appropriate. For those and the other foregoing reasons, Plaintiff Glantz respectfully requests that that Motion to Dismiss be denied in all respects. Should the Court find that any claim is deficient, Plaintiff requests an opportunity to amend their complaint appropriately within 30 days of the finding of that deficiency.

*/s/ Christopher E. Schaefer*
Christopher E. Schaefer, Esq.
Gordon J. Stock, Esq.
STOLL KEENON OGDEN PLLC
400 West Market Street, Suite 2700
Louisville, KY 40202
Phone: (502) 333-6000
christopher.schaefer@skofirm.com
gordon.stock@skofirm.com

Daniel Yu, Esq. (*pro hac vice pending*)
KAHANA & FELD LLP
2603 Main Street, Suite 900
Irvine, CA 92614
Tel: (949) 812-4781
dyu@kahanafeld.com

*Counsel for Plaintiff N. Glantz & Son, LLC*

21

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 6, 2026 a true copy of the foregoing instrument was served on each of the following persons listed below via the Court's CM/ECF system:

F. Maximilian Czernin
Steven M. Auvil
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth St., Suite 1900
Cincinnati, OH 45202
Phone: (513) 361-1200
max.czernin@squirepb.com
steven.auvil@squirepb.com

B. Scott Jones
REMINGER CO., LPA
730 West Main Street, Suite 300
Louisville, KY 40202
Phone: (502) 625-7292
sjones@reminger.com

/s/ *Christopher Schaefer*
Christopher Schaefer

4909-6712-1600.2

22