**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| N. GLANTZ & SON, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CLEANLIFE ENERGY LLC; and DOES 1 to 50, inclusive,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:26-cv-00454-GNS |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**


F. Maximilian Czernin (KY 93674)
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth St., Suite 1900
Cincinnati, OH 45202
Phone: (513) 361-1200
Email: max.czernin@squirepb.com

Steven M. Auvil (*pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
1000 Key Tower, 127 Public Square
Cleveland, OH 44114
Phone: (216) 479-8500
Email: steven.auvil@squirepb.com

B. Scott Jones
REMINGER CO., LPA
730 West Main Street, Suite 300
Louisville, KY 40202
Phone: (502) 625-7292
Email: sjones@reminger.com
***Counsel for Defendant CleanLife Energy LLC***

## TABLE OF CONTENTS


Table of Authorities ........ iii

Introduction ........ 1

Argument ........ 2

I. The Economic Loss Rule Bars the Majority of Plaintiff's Tort Claims (Counts Three, Four, Five, Seven, Eight, and Nine) ........ 2

A. The Economic Loss Rule Is Routinely Applied to Motions to Dismiss. ........ 3

B. The Complaint Does Not Allege Injury to Other Property. ........ 3

C. The Economic Loss Rule Applies to Fraud Claims ........ 7

II. Plaintiff's Remaining Tort Claims Should Be Dismissed for Failure to State a Claim (Counts Two, Three, Four, Five, Seven, Eight, Nine, and Ten). ........ 9

A. Plaintiff Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Two). ........ 9

B. Plaintiff Fails to State a Claim for Fraud (Count Three) or Negligent Misrepresentation (Count Four). ........ 10

C. Plaintiff Fails to State Claims for Product Liability or Strict Liability (Counts Five and Seven). ........ 12

D. Plaintiff Fails to State Claims for Negligence or Gross Negligence (Counts Eight and Nine). ........ 12

E. Plaintiff Fails to State a Claim for Interference with Contractual Relations / Prospective Relations (Count Ten). ........ 13

III. Plaintiff's Breach of Contract and Warranty Claims Fail Regardless of the Applicable Warranty. ........ 14

IV. Plaintiff Is Not Entitled to Leave to Amend ........ 15

Conclusion ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BG Ventures, LLC v. New England Gypsum Floors, LLC*,
No. KNLCV216052020S, 2021 WL 6608561 (Conn. Super. Ct. Dec. 30, 2021) ....................4

*Bosch v. Bayer Healthcare Pharms., Inc.*,
13 F.Supp.3d 730 (W.D. Ky. 2014) ....................12

*Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*,
161 F.Supp.3d 513 (W.D. Ky. 2015) ....................8

*Cooper Power Sys., Inc. v. Union Carbide Chemicals & Plastics Co.*,
123 F.3d 675 (7th Cir. 1997) ....................6

*Derby City Cap., LLC v. Trinity HR Servs.*,
949 F.Supp.2d 712 (W.D. Ky. 2013) ....................7, 8

*Ennes v. H & R Block E. Tax Servs., Inc.*,
No. 3:01-cv-00447-H, 2002 WL 226345 (W.D. Ky. Jan. 11, 2002) ....................10

*Fentress v. City of Leitchfield*,
No. 4:24-cv-124-RGJ-HBB, 2025 WL 1532584 (W.D. Ky. May 29, 2025) ....................9, 12

*Ferki v. Wells Fargo Bank, Nat. Ass'n*,
No. 10-cv-02756, 2010 WL 5174406 (E.D. Pa. Dec. 20, 2010) ....................6

*Giddings & Lewis, Inc. v. Indus. Risk Insurers*,
348 S.W.3d 729 (Ky. 2011) ....................4, 5, 6

*H & H Wholesale Servs., Inc. v. Kamstra Int'l, B.V.*,
373 F.Supp.3d 826 (E.D. Mich. 2019) ....................6

*Hackney v. Vascular Sols., Inc.*,
No. 3:12-cv-00170-CRS, 2018 WL 2970767 (W.D. Ky. June 13, 2018) ....................10

*Kuyat v. BioMimetic Therapeutics, Inc.*,
747 F.3d 435 (6th Cir. 2014) ....................15

*KYA Servs., LLC v. Midwest Elastomers, Inc.*,
No. 8:22-cv-01673, 2023 WL 8896926 (C.D. Cal. Dec. 18, 2023) ....................5

*La. Sch. Employees' Ret. Sys. v. Ernst & Young, LLP*,
622 F.3d 471 (6th Cir. 2010) ....................15

*Labron v. Nationstar Mortg., LLC*,
No. 1:15-cv-00149-GNS, 2016 WL 2993622 (W.D. Ky. May 23, 2016) ....................4

*Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*,
No. 3:09-cv-00644, 2011 WL 5904451 (W.D. Ky. Nov. 23, 2011) ....................3

*Nelson v. Columbia Gas Transmission, LLC.*,
808 F.App'x 321 (6th Cir. 2020) ....................12

*New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*,
44 F.4th 393 (6th Cir. 2022) ....................11

*Notredan, L.L.C. v. Old Republic Exch. Facilitator Co*.,
531 F.App'x. 567 (6th Cir. 2013) ....................9

*PCR Contractors, Inc. v. Danial*,
354 S.W.3d 610 (Ky. Ct. App. 2011) ....................12

*Rouse v. Farmer*,
No. 2015-CA-001626-MR, 2018 WL 2078030 (Ky. Ct. App. May 4, 2018) ....................14

*Sanderson v. HCA-The Healthcare Co.*,
447 F.3d 873 (6th Cir. 2006) ....................11

*Smith v. Am. Strategic Ins. Corp.*,
No. 4:24-cv-00079, 2025 WL 2073813 (W.D. Ky. July 23, 2025) ....................3

*Snow Pallet, Inc. v. Monticello Banking Co.*,
367 S.W.3d 1 (Ky. App. 2012) ....................13

*State Auto Prop. & Cas. Ins. Co. v. Hargis*,
785 F.3d 189 (6th Cir. 2015) ....................9, 10

*Univ. of Louisville v. Bohm*,
No. 2017-CA-000935-MR, 2019 WL 1422912 (Ky. Ct. App. Mar. 29, 2019) ....................10

*Warren Cnty. Water Dist. v. Badger Meter, Inc.*,
No. 1:24-cv-00109-GNS-HBB, 2025 WL 3657209 (W.D. Ky. Dec. 17, 2025) ....................3, 6

*Westlake Vinyls, Inc. v. Goodrich Corp.*,
518 F.Supp.2d 955 (W.D. Ky. 2007) ....................7

**Other Authorities**

Fed. R. Civ. P. 15(a) ....................15

Restatement (Third) of Torts: Liab. for Econ. Harm § 7 (2020) ....................................................4

## INTRODUCTION

Plaintiff's strategy to over plead the Complaint and repeated protestations that this case "concerns complex tort claims" do not make it so. The Opposition confirms that this case is, at most, a contract and warranty dispute about allegedly defective SmartPuck lights sold by Defendant CleanLife Energy LLC ("CleanLife") to Plaintiff. Plaintiff does not dispute that Kentucky's economic loss rule generally bars tort claims seeking recovery for disappointed commercial expectations, repair costs, replacement costs, lost profits, and other consequential losses arising from the alleged failure of a purchased product. Instead, Plaintiff attempts to avoid that rule by recasting the case as one involving damage to other property.

That argument, however, fails because the Complaint does not allege damage to other property, but that the SmartPucks failed while being used on the sign of a downstream customer, Mystic Lake. But Plaintiff does not allege that the SmartPucks physically damaged Mystic Lake's sign, the sign's components, or any property owned by Plaintiff. The Opposition argues, without citation to the Complaint, that the SmartPucks damaged or destroyed the Mystic Lake sign. However, under settled law, Plaintiff cannot amend its Complaint through briefing.

Nor can Plaintiff avoid dismissal by labeling alleged lost business and reputational harm as "other property." Kentucky's economic loss rule limits tort recovery for personal injury and damage to other property; it does not permit a commercial purchaser to transform consequential economic losses into tort damages by alleging that a failed product harmed customer relationships or reputation. If that were enough, the exception would swallow the rule, because nearly every commercial purchaser could allege that a defective product impaired its reputation with customers. And every alleged breach of a commercial contract would give rise to a litany of tort claims.

Separate and independent of application of the economic loss rule, Plaintiff fails to plausibly allege tort claims, and the Opposition does not even respond to (and thus concedes) several deficiencies identified in the Motion. Plaintiff does not allege a special relationship sufficient to assert a claim for breach of the implied covenant of good faith and fair dealing under Kentucky law. Plaintiff does not meet the heightened standard for pleading fraud and negligent misrepresentation—most glaringly regarding the "who" and the "when" the representation was made—and regardless these claims are impermissibly indistinguishable from Plaintiff's breach of contract claim. Plaintiff identifies no duty that CleanLife owed to it outside of the parties' contractual relationship, let alone one that CleanLife breached that would give rise to a negligence claim. And nowhere does Plaintiff plausibly allege that CleanLife caused Plaintiff's customer, YESCO, to breach its contract with Plaintiff.

Further, the Opposition underscores that Plaintiff's breach of contract and warranty claims are premised on an unsalvageable contradiction: Plaintiff's purchase order purports to be "the entire agreement between the parties" and "rejects any terms or conditions" from CleanLife, like warranties. Compl., Ex. A. But Plaintiff's claims are premised on CleanLife purportedly breaching a product specification warranty found nowhere in the purchase order.

Accordingly, and for the reasons set forth more fully below, the Motion should be granted.

## <u>ARGUMENT</u>

### I. The Economic Loss Rule Bars the Majority of Plaintiff's Tort Claims (Counts Three, Four, Five, Seven, Eight, and Nine)

CleanLife's Motion established that Kentucky's economic loss rule bars all of Plaintiff's tort claims except for tortious interference. *See* Mot. at 6–13. Plaintiff's Opposition makes three arguments contesting the applicability of the economic loss rule: (A) that it cannot be applied on a motion to dismiss; (B) that the Complaint alleged injury to property outside of the economic loss

rule; and (C) that the economic loss rule does not apply to fraudulent inducement claims. Each of Plaintiff's arguments should be rejected by the Court.

**A. The Economic Loss Rule Is Routinely Applied to Motions to Dismiss.**

Plaintiff first argues that "application of the economic loss rule is inappropriate at the Rule 12 stage." Opp. at 9. But Plaintiff cites no authority for the proposition that the economic loss rule is inapplicable at the pleadings stage. To the contrary, CleanLife's Motion cited two cases from this District where motions to dismiss were granted based on the economic loss rule. *See Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, No. 3:09-cv-00644, 2011 WL 5904451, at *2 (W.D. Ky. Nov. 23, 2011) (dismissing negligent misrepresentation claim as barred by the economic loss rule); *Smith v. Am. Strategic Ins. Corp.*, No. 4:24-cv-00079, 2025 WL 2073813, at *7 (W.D. Ky. July 23, 2025) (dismissing negligence claim as barred by the economic loss rule). Similarly, Magistrate Judge Brennenstuhl, in a case assigned to this Court, denied a plaintiff's motion for leave to amend a complaint seeking to assert a negligence claim because "***the tort claim would be barred by the economic loss doctrine and subject to dismissal***" under Rule 12(b)(6). *Warren Cnty. Water Dist. v. Badger Meter, Inc.*, No. 1:24-cv-00109-GNS-HBB, 2025 WL 3657209, at *3 (W.D. Ky. Dec. 17, 2025) (emphasis added). Plaintiff's reliance on cases where the economic loss rule was discussed at the summary judgment stage does not salvage its argument.

**B. The Complaint Does Not Allege Injury to Other Property.**

Plaintiff's second argument is that the economic loss rule is inapplicable because "other property" besides the SmartPucks has been harmed: "the Mystic Lake sign and Glantz's reputation." Opp. at 8; *see id.* at 11–14. Neither purported injury to the alleged "other property" is sufficient to avoid dismissal based on the economic loss rule.

1. Plaintiff's Unpled Injuries to Mystic Lake's Sign Are Insufficient.

Plaintiff's claim that purported damage to "the Mystic Lake sign and its other component parts" warrants denial of the Motion, Opp. at 12, should be rejected for at least two reasons.

***First***, the Complaint contains no allegations that the Mystic Lake sign has been damaged. The most Plaintiff alleges is that "some of the SmartPucks that Glantz had purchased from CleanLife had failed, showing visible water ingress" such that the sign at Mystic Lake had "some of the lights out." Compl. ¶ 15. These are not allegations that the sign, as opposed to the SmartPucks supplied by CleanLife, have been damaged.

Plaintiff cannot salvage its Complaint through the arguments of counsel made in an opposition brief. Indeed, "[i]t is a basic principle that ***the complaint may not be amended by [a] brief[ ] in opposition to a motion to dismiss.***" *Labron v. Nationstar Mortg., LLC*, No. 1:15-cv-00149-GNS, 2016 WL 2993622, at *2 n.1 (W.D. Ky. May 23, 2016) (granting motion to dismiss where allegations in opposition to motion to dismiss were "noticeably absent from Plaintiff's Complaint") (emphasis added). For this reason, Plaintiff's allegations in the Opposition regarding supposed damages to Mystic Lake's sign should not be considered by this Court.

***Second***, any purported damage to the Mystic Lake sign is irrelevant because that sign is owned by a third party, not Plaintiff. As alleged in the Complaint, Mystic Lake is a downstream customer of YESCO, which is in turn a downstream customer of Plaintiff Glantz. *See* Compl. ¶¶ 14–15. As succinctly put by the Third Restatement of Torts, "a claimant cannot recover for economic loss caused by . . . unintentional injury to property in which the claimant has no proprietary interest." Restatement (Third) of Torts: Liab. for Econ. Harm § 7 (2020);[1] *see also BG*

[1] In *Giddings*, the Supreme Court of Kentucky cited the Third Restatement of Torts favorably when adopting the economic loss rule. *See Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 738 & n.6 (Ky. 2011) (citing Restatement (Third) of Torts: Products Liability §§ 1 & 21 (1998)).

*Ventures, LLC v. New England Gypsum Floors, LLC*, No. KNLCV216052020S, 2021 WL 6608561, at *2 (Conn. Super. Ct. Dec. 30, 2021) (granting defendant subcontractor's equivalent to Rule 12(b)(6) motion because plaintiff contractor did not own allegedly damaged property, only plaintiff's client did); *KYA Servs., LLC v. Midwest Elastomers, Inc.*, No. 8:22-cv-01673, 2023 WL 8896926, at *5 (C.D. Cal. Dec. 18, 2023) ("Implicit in the requirement that a plaintiff illustrate non-economic losses to recover in tort is that the damaged property must be owned by that plaintiff." (citation omitted)). Notably, Plaintiff's remaining tort claims purportedly seek damages for harm to Plaintiff, not to Mystic Lake or Mystic Lake's property. *See, e.g.*, Compl. ¶ 45 ("Plaintiff has been damaged" from alleged fraud). Plaintiff has even conceded that it has not stated an indemnity claim for any harm to a downstream customer. *See* Opp. at 2.

Because the Complaint does not allege damage to Mystic Lake's sign—which is not even owned by Plaintiff—any alleged damage to the sign does not allow Plaintiff to evade the economic loss rule.

2. Plaintiff's Alleged Reputational Damage Is Insufficient to Avoid the Economic Loss Rule and Is Conclusory Regardless.

Nor can Plaintiff avoid the economic loss rule by pointing to vague allegations of "reputational harm" as "other property" outside the scope of the economic loss rule. Opp. at 13–14. A "business reputation exception" to the economic loss rule is contrary to Kentucky law. In *Giddings*, the Supreme Court of Kentucky held that, under the economic loss rule, "costs for repair or replacement of the product itself, ***lost profits and similar economic losses*** cannot be recovered" under tort theories. 348 S.W.3d at 738 (emphasis added). Plaintiff's purported reputational harm of "specific lost business [and] diminished relations," Opp. at 14, is precisely the sort of "lost profits and similar economic losses" that *Giddings* held cannot be recovered. As Magistrate Judge Brennenstuhl recently explained in a case assigned to this Court, allegations of "damage to

reputation" are insufficient to avoid application of the economic loss rule under Rule 12(b)(6). *Warren Cnty. Water Dist.*, 2025 WL 3657209, at *3 (denying motion for leave to amend complaint as to negligence claim).

Rather than address *Warren County Water District* or *Giddings*, Plaintiff contends that the law of other jurisdictions, specifically Texas and New York, are helpful for determining whether the economic loss rule applies to claims for reputational harm under Kentucky law. Opp. at 13–14. In cherry-picking these jurisdictions, Plaintiff fails to mention that other jurisdictions have categorically held the economic loss rule bars claims for business reputational harm. *See, e.g.*, *Ferki v. Wells Fargo Bank, Nat. Ass'n*, No. 10-cv-02756, 2010 WL 5174406, at *10 (E.D. Pa. Dec. 20, 2010) (applying Pennsylvania law; "[C]ourts have agreed that ***harm to business reputation constitutes economic loss, not injury to person or property.***" (emphasis added)); *H & H Wholesale Servs., Inc. v. Kamstra Int'l, B.V.*, 373 F.Supp.3d 826, 842 (E.D. Mich. 2019) (dismissing fraudulent inducement claim under economic loss rule because "harm to business" is economic harm, not harm to property, and barred by rule). As the Seventh Circuit has persuasively reasoned, "any other holding would swallow the economic loss doctrine" by allowing parties to avoid contract law by "***the simple expedient of pleading that their commercial losses—repair costs, lost profits and the like—included damage to business goodwill.***" *Cooper Power Sys., Inc. v. Union Carbide Chemicals & Plastics Co.*, 123 F.3d 675, 681 (7th Cir. 1997) (applying Wisconsin law) (emphasis added).

Moreover, even under the non-binding authorities Plaintiff cites, Plaintiff's allegations of reputational harm are not adequately pleaded under *Twombly* and *Iqbal* to support any exception. The Complaint's few allegations about reputational harm are merely conclusory asides that Plaintiff suffered reputational harm. *See* Compl. ¶¶ 20, 22. Plaintiff does not identify any lost

order, lost contract, change in market sentiment, or reputational injury caused by CleanLife independent of the alleged product failure. Even if Kentucky law's economic loss rule contained an exception for reputational harm (which it does not), Plaintiff's allegations are woefully deficient and implausible.

Because Kentucky's economic loss rule bars torts claiming reputational harm, any alleged damage to Plaintiff's reputation does not prevent dismissal of many of Plaintiff's tort claims under the economic loss rule.

### C. The Economic Loss Rule Applies to Fraud Claims

Plaintiff does not dispute that the economic loss rule applies to claims for negligent misrepresentation, product liability, strict liability, negligence, and gross negligence. *See generally* Opp. Plaintiff nevertheless claims that "Fraud Claims are Expressly Distinguished from, and Outside of, the Economic Loss Rule" and that Plaintiff suffered damages "differ[ent] from the damages sustained by reason of the breach of contract." Opp. at 10–11. Neither assertion is true.

As established in the Motion, "Kentucky courts have repeatedly rejected [fraudulent inducement claims] when the fraudulent inducement claims are indistinguishable from and seek recovery for the same economic losses as the alleged breach of contract." Mot. at 10 (citing *New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 413–15 (6th Cir. 2022) (barring fraudulent inducement claims under the economic loss rule because it "attempt[ed] to recover the same damages under both breach of contract and fraudulent inducement"); *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, 161 F.Supp.3d 513, 531 (W.D. Ky. 2015) (barring fraudulent inducement claim where the alleged fraud was "relate[d] solely to condition of the goods, . . . [and thereby] necessarily inextricably intertwined with the contract requirements")). Additional cases have held similarly. *See, e.g.*, *Derby City Cap., LLC v. Trinity HR Servs.*, 949 F.Supp.2d 712, 727 (W.D. Ky. 2013) ("[B]ased on this Court's decision in *Westlake Vinyls*[*, Inc.*

*v. Goodrich Corp.*, 518 F.Supp.2d 955 (W.D. Ky. 2007)], it appears that the economic loss rule would preclude recovery on Plaintiffs' fraudulent inducement claim.").

Plaintiff's Opposition does not address *Caudill Seed* or the other cited cases contradicting the argument that fraud claims are "outside of" the economic loss rule. Instead, Plaintiff relies on the idea that its fraudulent inducement claim depends on allegations that CleanLife "ma[de] promises it never intended to fulfill,"—*i.e.* promises to "deliver a product that conformed to the requisite specifications"—and thus the damages are "compensable outside of the economic losses that Glantz sustained." Opp. at 11. The problem with Plaintiff's argument, however, is that the Complaint's alleged harm and desired relief for breach of contract and fraudulent inducement damages are ***identical***: at least $3.4 million because CleanLife allegedly provided goods that did not comply with contractual specifications. *See* Compl. ¶ 30 (breach of contract; "As a direct and proximate result of Defendants' improper conduct and defective goods, Plaintiff has been damaged . . . in excess of $3.4 million"), ¶¶ 40 & 45 (fraud; "Defendants . . . affirmatively present[ed] the goods as complying with the specifications above when, in fact, they did not comply with those specifications . . . . As a direct and proximate result of Defendants' fraud . . . Plaintiff has been damaged . . . in excess of $3.4 million").

Courts have routinely applied the economic loss rule to foreclose such identical fraudulent inducement claims, including claims based on the condition of a delivered product. *See, e.g.*, *Caudill Seed*, 161 F.Supp.3d at 531 ("Because any fraud here relates solely to condition of the goods, any fraud claims are necessarily inextricably intertwined with the contract requirements."); *Derby City*, 949 F.Supp.2d at 727 ("[T]o the extent Plaintiffs point to the [contract] as evincing a material misrepresentation by [defendants] . . . the Court finds that Plaintiffs' fraudulent inducement claim is inextricably intertwined with their breach-of-contract claim.").

Because fraud claims are not outside of the economic loss rule, and Plaintiff's fraud claim is intertwined with the alleged breach of contract and the alleged damages are the same, the fraud claim is barred by the economic loss rule and should be dismissed.

## II. Plaintiff's Remaining Tort Claims Should Be Dismissed for Failure to State a Claim (Counts Two, Three, Four, Five, Seven, Eight, Nine, and Ten).

Even if Plaintiff's tort claims were not barred by the economic loss rule, they would still be subject to dismissal for failure to state a claim under the applicable pleading standards. *See* Mot. at 13–22. Plaintiff's Opposition fails to even address many of the deficiencies raised by CleanLife. *See* Opp. at 14–20. Under applicable law, "***when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.***" *Fentress v. City of Leitchfield*, No. 4:24-cv-124-RGJ-HBB, 2025 WL 1532584, at *3 (W.D. Ky. May 29, 2025) (citing, *inter alia*, *Notredan, L.L.C. v. Old Republic Exch. Facilitator Co*., 531 F.App'x. 567, 569 (6th Cir. 2013) (quotation omitted) (emphasis added). This rule applies here as follows.

### A. Plaintiff Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Two).

As established in the Motion, under Kentucky law, a claim for breach of the covenant of good faith and fair dealing "is only permitted where there is a special relationship between the parties and where distinct elements are present, such as: unequal bargaining power, vulnerability, and trust among the parties; nonprofit motivations for contracting (e.g., peace of mind, security); and inadequacy of standard contract damages." Mot. at 13 (quoting *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 196 (6th Cir. 2015)). The Opposition does not assert any special relationship exists between Glantz and CleanLife. *See generally* Opp. Instead, Plaintiff disputes that this rule exists and attempts to distinguish *Hargis* as "pertain[ing] to insurer-insured

relationships and the establishment of a reverse bad-faith tort claim, not about the question of what the complaint states on its face." Opp. at 15.

The rule in *Hargis*, however, is not specific to insurer-insured relationships. And other courts applying Kentucky law have held that an independent claim for a breach of the implied covenant of good faith and fair dealing fails where the contract was between two ordinary commercial parties. *See e.g.*, *Ennes v. H & R Block E. Tax Servs., Inc.*, No. 3:01-cv-00447-H, 2002 WL 226345, at *2 (W.D. Ky. Jan. 11, 2002) (dismissing claim for breach of implied covenant of good faith and fair dealing with prejudice as "only in contracts involving 'special relationships' not found in ordinary commercial settings do courts find a tort duty of good faith"); *Univ. of Louisville v. Bohm*, No. 2017-CA-000935-MR, 2019 WL 1422912, at *6 (Ky. Ct. App. Mar. 29, 2019) (remanding for dismissal of good faith and fair dealing claim where "[t]he hallmarks of a "special relationship" between the parties are not present."); *see also Hackney v. Vascular Sols., Inc.*, No. 3:12-cv-00170-CRS, 2018 WL 2970767, at *3 (W.D. Ky. June 13, 2018) (granting summary judgment because "none of the other circumstances which may give rise to a 'special relationship' are present in this case.").

Because Plaintiff's Complaint does not allege a special relationship, the claim for breach of the implied covenant of good faith and fair dealing fails. *See Hargis*, 785 F.3d at 196.

### B. Plaintiff Fails to State a Claim for Fraud (Count Three) or Negligent Misrepresentation (Count Four).

#### 1. Plaintiff's Complaint Fails to Meet the Pleading Standards for Fraud and Negligent Misrepresentation

Plaintiff does not dispute that claims for fraud and negligent misrepresentation are subject to Rule 9(b)'s pleading standards, including alleging the "who, what, when, where, and how" of the alleged representation. *See* Opp. at 16; Mot. at 14–17. Instead, Plaintiff contends that it satisfied this standard because, notably, (1) "the 'who' is CleanLife," (2) the "how" and "[t]he

'what' is CleanLife's representation that its products met the IP67 standard," and (3) "[t]he 'when' is between February 28, 2024 and March 12, 2024, when the products were delivered." Opp. at 17. These allegations are insufficient.

With respect to "who," it is insufficient as a matter of law to refer to an entity rather than an individual. *See New London Tobacco*, 44 F.4th at 411 (rejecting the plaintiff's fraud allegations for generally alleging that the corporate defendant made the fraudulent representation).

With respect to the "how" and "what," the Complaint never alleges the specific statement by CleanLife regarding the IP67 standard, such as whether that statement was delivered orally or in a written document. *See Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (holding that the heightened pleading requirements of Rule 9(b) require "precisely [identifying] what statements were made in what documents or oral representations").

Most egregiously, with respect to the "when," Plaintiff contends that the statements were made "between February 28, 2024 and March 12, 2024," Opp. at 17, ***even though the contract was entered into on December 20, 2023***. *See* Compl. ¶ 32. Plainly, the claim that CleanLife fraudulently induced Plaintiff into entering a contract fails where the alleged misrepresentations were made ***after the contract was entered***.

For these reasons, Plaintiff's fraud and negligent misrepresentation claims should be dismissed for failure to meet the heightened pleading standard of Fed. R. Civ. P. 9(b).

2. Plaintiff Conceded Other Failures with Its Claims

As established in the Motion, Plaintiff's fraud claim should be dismissed because Plaintiff failed "to plead specific damages that it suffered by relying on [Defendant's alleged] misrepresentation." Mot. at 16 (quoting *New London Tobacco*, 44 F.4th at 412). As explained in the Motion and *supra*, Plaintiff's alleged damages are actually economic losses stemming from the breach of contract. *Compare, e.g.*, Compl. ¶ 30 *with* Compl. ¶ 45. The Opposition fails to

address the specific damages issue, thereby conceding that dismissal on this basis is appropriate. *See, e.g.*, *Fentress*, 2025 WL 1532584, at *3.

Similarly, the Motion raised the issue that "a party's intent to perform a promise or an agreement cannot form the basis of a negligent misrepresentation claim." *PCR Contractors, Inc. v. Danial*, 354 S.W.3d 610, 619 (Ky. Ct. App. 2011); *see* Mot. at 17. The Opposition ignores this point of law and argues that its negligent misrepresentation claim is based on the allegation that "CleanLife never intended to deliver products that were actually IP67 rated." Opp. at 11. In substance and effect, Plaintiff has conceded that dismissal on this basis is appropriate. *See, e.g.*, *Fentress*, 2025 WL 1532584, at *3.

### C. Plaintiff Fails to State Claims for Product Liability or Strict Liability (Counts Five and Seven).

Plaintiff's entire argument as to its product liability and strict liability claims is its assertion that "the Complaint also alleges that CleanLife damaged other property, namely, the Mystic Lake sign in which the SmartPucks were ultimately installed." Opp. at 17. As addressed *supra* Section I.B.1, the Complaint contains no allegations that the Mystic Lake sign was damaged, so Plaintiff's claims should be dismissed. Moreover, under Kentucky law, an element of any product liability action is that the Plaintiff allege "physical harm to [i] the ultimate user or consumer or [ii] ***his*** property." *Bosch v. Bayer Healthcare Pharms., Inc.*, 13 F.Supp.3d 730, 740 (W.D. Ky. 2014) (emphasis added). Plaintiff's failure to allege any harm to its property, not Mystic Lake's, is fatal to its product liability claims.

### D. Plaintiff Fails to State Claims for Negligence or Gross Negligence (Counts Eight and Nine).

As established in the Motion, the claims for negligence and gross negligence fail because Plaintiff failed to allege a duty of care independent of the contract that CleanLife allegedly breached. *See* Mot. at 19–20; *Nelson v. Columbia Gas Transmission, LLC.*, 808 F.App'x 321, 330

(6th Cir. 2020) (holding that plaintiff could not maintain a negligence claim because it identified no duty owed by the defendant apart from its contractual duties). In the Opposition, Plaintiff merely contends that the ultimate issue is "whether the [Mystic Lake] sign is 'other property.'" Opp. at 17. Putting aside that the Complaint does not allege damage to the Mystic Lake sign (*see supra* Section I.B.1), the Opposition does not establish that CleanLife owed ***Plaintiff*** a duty of care not to injure a third party's property, let alone one arising independent of a contract. Because no such duty exists, Plaintiff's negligence and gross negligence claims should be dismissed.

### E. Plaintiff Fails to State a Claim for Interference with Contractual Relations / Prospective Relations (Count Ten).

Plaintiff does not dispute that to plead a tortious interference with contract claim, a plaintiff must allege "that defendant's actions in fact caused a breach of the contract." *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 6–7 (Ky. App. 2012); *see* Opp. at 18. Nor does Plaintiff dispute that the Complaint does not allege that YESCO "breached" any contract with Plaintiff. Instead, Plaintiff contends that its allegations about "disrupt[ion]" of Plaintiff's relationship with YESCO should be treated synonymously with an allegation that YESCO breached its contract with Plaintiff. *See* Opp. at 18–19. Plaintiff's conclusory allegations about a "disrupt[ion]," Compl. ¶¶ 82–83, cannot be treated as synonymous with a breach of contract, because Plaintiff alleges that relationships with prospective customers who have no contract were also "disrupt[ed]." The Complaint simply contains no non-conclusory allegations specifying any breach YESCO committed, such as a failure to pay, that was caused by CleanLife.

Additionally, with respect to a prospective relationship theory, the Motion emphasized that such a theory depends on the implausible contention, alleged "on information and belief," that CleanLife's motivation for supplying the defective products was that YESCO would be so unsatisfied with Plaintiff that it would buy the same purportedly defective product from CleanLife

directly. Mot. at 21 (citing Compl. ¶¶ 22, 82). Further doubling down, the Opposition asserts that CleanLife's motivation to provide inferior products in order to sell more of that same product is "logical." Opp. at 19. Not so. Plaintiff has no logical or plausible explanation for how CleanLife providing an allegedly defective SmartPuck would have encouraged YESCO to purchase more of the allegedly defective product directly from CleanLife. Indeed, this is precisely the sort of "speculation, supposition, and inference" insufficient to state a claim. *Rouse v. Farmer*, No. 2015-CA-001626-MR, 2018 WL 2078030, at *5 (Ky. Ct. App. May 4, 2018) (holding trial court did not err in dismissing tortious interference claim).

## III. Plaintiff's Breach of Contract and Warranty Claims Fail Regardless of the Applicable Warranty.

Plaintiff's breach of contract (Count One) and breach of warranty (Count Six) claims are both premised on CleanLife allegedly providing SmartPucks that "failed to meet the required product specifications, namely the IP67 ingress protection standard." Compl. ¶ 28 (breach of contract); *see also id.* ¶ 64 (warranty). The Purchase Order that Plaintiff attached as Exhibit A to the Complaint ***contains no such representations*** regarding the IP67 ingress protection standard. *See generally* Compl. Ex. A. As part of the Motion, CleanLife attached the warranty that applied. *See* ECF Nos. 11-2 & No. 11-3. Yet in its Opposition, Plaintiff asserted that "the alleged warranty attached by CleanLife to its Motion is not the warranty that Glantz references in its Complaint, because Glantz expressly disclaimed all warranties purportedly issued by CleanLife." Opp. at 9.

Putting aside that the Opposition identifies no alternative warranty document that applied, Plaintiff cannot have its cake and eat it too. Under the theory of Plaintiff's Opposition, there are no extra-contractual warranties, including warranties regarding the IP67 standard, because any

documents not part of the purchase order are disclaimed. *See* Opp. at 9.[2] The purchase order does not contain any warranties, and Plaintiff does not argue otherwise. Without any applicable warranty or contract document regarding the IP67 protection standard, Plaintiff fails to allege a breach of contract or breach of warranty and those claims should be dismissed.

**IV. Plaintiff Is Not Entitled to Leave to Amend**

Plaintiff's Opposition makes a parting plea that if any claim is dismissed "Plaintiffs [sic] move for leave to amend their claims." Opp. at 20. Plaintiff did not file a motion to amend, nor did it include a proposed amended complaint identifying proffered changes. The Sixth Circuit has repeatedly held that such requests are improper under Fed. R. Civ. P. 15(a). *See, e.g.*, *La. Sch. Employees' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (affirming dismissal without leave to amend); *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (affirming order granting motion to dismiss and denying motion for leave to amend). "Plaintiff[ is] not entitled to an advisory opinion from the Court informing [it] of the deficiencies of the complaint and then an opportunity to cure those deficiencies," particularly given the bevy of conceded failures in Plaintiff's pleading. *La. Sch. Employees'*, 622 F.3d at 486 (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000)). Accordingly, the Court should deny the procedurally improper request for leave to amend.

<u>**CONCLUSION**</u>

For all of the foregoing reasons and as explained in the Motion, the Complaint should be dismissed with prejudice.

---

[2] CleanLife does not concede that the terms and conditions of the Glantz PO apply, and maintains that the express warranty from CleanLife [ECF No. 11-3] governs and limits Plaintiff's remedies for allegedly defective goods.

DATED: August 20, 2026

Respectfully submitted,

*/s/ F. Maximilian Czernin*

F. Maximilian Czernin (KY 93674)
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth St., Suite 1900
Cincinnati, OH 45202
Phone: (513) 361-1200
Email: max.czernin@squirepb.com

Steven M. Auvil (*pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
1000 Key Tower, 127 Public Square
Cleveland, OH 44114
Phone: (216) 479-8500
Email: steven.auvil@squirepb.com

B. Scott Jones
REMINGER CO., LPA
730 West Main Street, Suite 300
Louisville, KY 40202
Phone: (502) 625-7292
Email: sjones@reminger.com

***Counsel for Defendant CleanLife Energy LLC***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 20, 2026, a true copy of the foregoing instrument was served via the Court's CM/ECF system to all counsel of record.

/s/ F. Maximilian Czernin

F. Maximilian Czernin